Joseph Conway, Plaintiff in Error, *v.* City of St. Louis, Defendant in Error.

February 1, 1881.

1. The official acts of *de facto* officers are validated only from motives of public policy, to preserve the rights of third persons and the organization of society.

2. A contract made with an officer after his right to perform the functions of his office had ceased, will not be validated so as to warrant a recovery under it for work done after the facts were notorious, and where the other

party to the contract had notice that the municipality sought to be bound· had no interest in the subject of the contract.

3. Where the attention of the trial court was not called to its failure to allow an inconsequential sum as interest, the judgment will not be reversed for ·such failure.

ERROR to the St. Louis Circuit Court, BOYLE, J. *Affirmed.*

E. P. McCARTY, for the plaintiff in error, cited: *The State ex rel.* v. *Sutton,* 3 Mo. App. 388.

LEVERETT BELL, for the defendant in error.

BAKEWELL, J., delivered the opinion of the court.

The Scheme and Charter provided for by sects. 20 and 21 of Art. IX. of the Constitution of 1875 were ratified by a majority of the legal voters voting at the election of August 22, 1876, provided for in sect. 20, and were thus made a law, the Scheme becoming the organic law of the county. and city of St. Louis, and superseding the Charter of St. Louis from October 22, 1876, the date fixed in the Constitution. The fact was not, however, known or officially certified until long after the next November election; and for months after the Scheme and Charter went into effect, by law, the entire county and municipal affairs of city and county were administered by the existing officers as if the Scheme and Charter had been defeated. The actual transfer of property; and of all claim of authority from the former County Court of the county of St. Louis to the city of St. Louis, took place on March 15, 1877, up to which date the judges of the County Court were performing functions as judges of the County Court of the county of St. Louis, and the county engineer was acting under their orders.

On November 25, 1876, the county of St. Louis, by the county engineer, entered into a written contract with plaintiff to do certain macadamizing and mason-work on the Conway Road, at a point outside of the city limits as defined by the Scheme and Charter. Plaintiff proceeded to do the work under the contract; and on March 15, 1877, the day

of the actual transfer of property and government as above stated, an estimate of the work then done showed that there was then due to plaintiff under the contract, after deducting payments, $40.18. There was evidence tending to show that prior to that date the county engineer, by order of the County Court, notified the plaintiff to stop the work on that day; there was evidence, on the other hand, tending to show that plaintiff never received this notice. Plaintiff continued the work until a date not set forth, and claims in this action $1,298.53 for the work done under the contract after March 15th. He also claims $1,200 damages, which he says he sustained from the refusal to perform the contract and continue the payments under it, by reason of which he was compelled to suspend the work. The cause was tried by the court without a jury. The only disputed fact was the question of notice to stop work on March 15th. The court found that, under the evidence, plaintiff was not entitled to recover for anything except the balance unpaid for work up to March 15th, and rendered judgment for that amount.

The Constitution provides (Art. IX, sect. 23) that, " in consideration of the city becoming proprietor of all the county buildings and property within its enlarged limits, it shall assume the whole of the existing county debt," and by sect. 10 of the Scheme, the city assumes the existing debt of the county.

The contract with plaintiff was invalid. There was no County Court and no county engineer to make it, and the territorial subdivision of the State for which the County Court had once acted, no longer existed. The void act might be validated by the *de facto* principle, if this were a case to which that principle ought to apply. But it is not such a case. The *de facto* rule is based on public policy. It is adopted as a necessity to preserve the rights of third persons and the organization of society. The doctrine is, that where the citizen, being not at all at fault, trusts in

his dealings to non-legal authorities in whom all believe, his rights are not to be destroyed. *Adams* v. *Lindell*, 5 Mo. App. 202. But the doctrine will not serve to validate this contract so as to enable plaintiff to recover under it for services rendered after the facts were notorious, after the change of government had been affected, after the old county had notoriously ceased to exist, and after the change of property spoken of in the Constitution had been effected. Plaintiff had notice that the city of St. Louis had no interest in any work done by him outside the city limits after March 15th. The necessity which creates the rule of validating the void acts of those who are not legal officers does not apply to this case. To validate the contract would be, in fact, to do an apparent injustice by making the city assume, as an existing debt of the county, a liability for services for which the county had not contracted, from which the city derives no benefit, and which were rendered after the invalidity of the ordinance was known.

For the work done, and of which the county got the benefit whilst the old County Court was still recognized and was performing its functions, and before the two governments were actually separated, it is perhaps just that plaintiff should recover. As respondent does not complain of the judgment, we need not examine that question. But, under the contract, the plaintiff has no legal claim for loss of profit he might have made if the work had been completed according to its terms, or for work done by him under it after the complete separation, in fact, of city and county. In order to give him such a claim it would be necessary for the courts to validate this void contract on the theory that the void contracts of *de facto* officers — that is, those that are not legal officers, and have no legal right to contract — may be validated to support a contract where money and labor has been expended without fault, and in necessary reliance on the authority of the *de facto* officer to contract.

The case, as we have said, is not one for the application of the *de facto* doctrine.

We think that the judgment should be affirmed. Plaintiff contends that, on any theory, the judgment is erroneous, in that he is entitled to interest if entitled to recover at all. The undisputed evidence was that $40.18 remained due on March 15, 1877, under the terms of the contract, and the judgment is for this amount. If interest had been given, the judgment would have been for about $45. It does not appear that the attention of the trial court was specially called to the omission to give interest, and we will not now disturb the judgment for so small a matter.

The judgment is affirmed. All the judges concur.