JAMES F. MURPHY *vs.* CHARLES P. MOIES, Town Treasurer
of the Town of Lincoln.

The so called Fitzsimmons town council declared elected in the town of Lincoln,
   June 3, 1891, and ousted July 3, 1891, by *quo warranto,* was a town council
   neither *de jure* nor *de facto.*
A. who had acted as attorney of this council and knew its history and the reasons
   for questioning its legality, presented to it his claim against the town under
   Pub. Stat. R. I. cap. 34, § 12.
*Held,* that in so doing he assumed the chances of its legality or illegality.
July 3, 1891, the legal town council voted to ratify all the acts of this illegal
   Fitzsimmons council.
*Semble,* that such vote of ratification was null.

ASSUMPSIT.    Heard by the court, jury trial being waived.
*December* 21, 1892.    STINESS, J.    The question in this case
is whether the plaintiff's claim was presented to the town
council of the town of Lincoln, pursuant to the requirement
of Pub. Stat. R. I. cap. 34, § 12.[1]

The claim was presented June 17, 1891, to a body claiming
to be the town council chosen at the election held June 1,
1891, and declared to have been so elected, by the town coun-
cil whose duty it was to count the votes, June 3, 1891, at
which time the members of the body took the oath of office
and organized by the choice of F. E. Fitzsimmons as presi-
dent.    At the close of that election[2] bunches of tissue ballots,
which stuck together on account of the freshness of the ink
and which were so rolled together as to show that they could
not have been separately cast, were found in the ballot box,

---

[1] As follows :

SECT. 12.    Every person who shall have any money due him from any town,
or any claim or demand against any town for any matter, cause or thing what-
soever, shall take the following method to obtain the same, to wit :    Such person
shall present to the town council of the town, and to the city council of the city,
a particular account of his claim, debt, damages or demand, and how incurred or
contracted ; which being done, in case just and due satisfaction is not made him
by the town treasurer of such town within forty days after the presentment
of such claim, debt, damages or demand aforesaid, such person may commence
his action against the town treasurer for the recovery of the same.

[2] As to this election see *State* v. *Kearn,* 17 R. I. 391, and *State* v. *Smith,* 17 R. I.
415.

whereupon the count was contested, both before the moderator and afterwards before the town council ; but upon the advice of the plaintiff, as town solicitor, these ballots were counted and the result declared. June 4, 1891, *quo warranto* proceedings were instituted, upon which judgment of ouster was entered July 3, 1891, on the ground that said body was not elected as the town council and on that day the legally elected members of the town council met and qualified. It is now claimed that the body called the Fitzsimmons council was a *de facto* council and that a presentation of the claim to it was a compliance with the statute.

In a case like this it is of course necessary for the plaintiff to show that he has presented his claim to a town council, either *de jure* or *de facto*. Under Pub. Stat. R. I. cap. 37, § 22, all town officers hold their offices until the next annual election "and thereafter until their successors shall be lawfully qualified to act." Consequently the town council in office at the election June 1, 1891, continued to be the town council *de jure* until their successors were qualified to act, July 3, 1891. Officers *de facto* and *de jure* cannot be in possession of the same office at the same time. Possession by officers *de jure* excludes, on account of its paramount right, the consideration of any other claim. Mechem on Public Officers, § 322. But the plaintiff contends that the old town council, so to call it, was not in possession of the office, because it had abdicated upon declaring the result of the election in favor of the Fitzsimmons council. We are not prepared to say that this is a necessary conclusion; for, even though a council has declared the result of a counting of ballots, as required by statute, it is easy to conceive that it might nevertheless afterwards deny the right to act by the persons thus declared elected, upon the ground that the declaration was made in ignorance of law or of material facts or upon the ground of ineligibility, disqualification or some illegality. Surrender of possession is a question of fact. In the present case it has been assumed but it has not been shown. There is no proof that the old council passed any regular meeting or that it gave up its office otherwise than by declaring the

result of the election.    Pub. Stat. R. I. cap. 38, § 2, only requires meetings once a month, and the old council met both on June 3d and July 3d.    The inference that they considered themselves in office up to July 3d is therefore as strong as the inference that they had surrendered their office in declaring the result.    But however this may have been, we think it is clear that this plaintiff is not entitled to rely upon the action of the Fitzsimmons council as a *de facto* body.    The definition of a *de facto* officer most commonly accepted is that of Lord Ellenborough, in *Rex* v. *Corporation of the Bedford Level*, 6 East, 356: "One who has the reputation of being the officer he assumes to be and yet is not a good officer in point of law."    This reputation may be founded on color of title or on possession of any office as acquiesced in by the public.    The recognition of the acts of such officers rests upon the ground of public policy.    *Petersilea* v. *Stone*, 119 Mass. 465.    It is for the protection of persons dealing with those who are publicly exercising official functions which are generally acquiesced in and so understood to be valid.    But there is a wide difference between such cases and the case at bar. Here the title of the Fitzsimmons council was challenged by the State in *quo warranto*, June 4, 1891, the next day after its members had taken the oath of office and before the presentation of the plaintiff's claim.    In the early case of *The King* v. *Lisle*, Andrews, 163, *quo warranto*, the respondent held an appointment under Goldwire, mayor of Christchurch, who claimed the office of mayor under color of an election and because upon presenting himself to the steward of the court-leet he was sworn into office and executed the same. Goldwire's title was questioned, a fact known to the respondent, and he was subsequently ousted on *quo warranto*.    But the respondent claimed an appointment by a *de facto* officer. The court said it was extraordinary that one should set up a title derived from a pretended mayor, whose right was litigating at the very time and that if this could be done there would be no difference between a rightful officer and an intruder.    The leading case in this country on this subject is *State* v. *Carroll*, 38 Conn. 449.    Butler, C. J., in speaking

of the origin of the recognition of *de facto* officers, says: "It was not because of any quality or character conferred upon the officer or attached to him by reason of any defective election or appointment, but a mere name or character given to his acts by the law, for the purpose of validating them. When, therefore, in civil cases the public or third persons had knowledge that the officer was not an officer, *de jure*, the reason of validating the acts to which they submitted, or which they involved, failed and the law no longer protected them. That principle was recognized and applied even in *The King* v. *Lisle*, and particularly in *Rex* v. *Corporation of Bedford Level*." Judge Butler embodied this principle in his definition of *de facto* officers, as follows: "Third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public." Of course this does not imply that there must be knowledge that the officer will be adjudged not to be an officer *de jure*; but that one must know that the title is questioned and the substantial facts upon which the question is made. In *Rex* v. *Corporation of Bedford Level*, the question was whether a deputy registrar could be regarded as an officer after the death of his principal and it was held that although his acts might be good before notice of the death, yet after the death of the principal was known they were invalid. In *Conway* v. *City of St. Louis*, 9 Mo. App. 488, it was held that a contract, entered into before a transfer by law of the county government to the city became known, though good for work done up to the time when such transfer became known, could not be considered as valid under the *de facto* doctrine after the facts were notorious. In *The matter of the petition of Kendall*, 85 N. Y. 302, one of the considerations stated by the court in recognizing *de facto* officers was the fact that they discharged their duties without question as to their official character. See also *Conover* v. *Devlin*, 15 How. Pr. 470. Thus it appears that *reputation* and *acquiescence* are controlling ele-

ments in determining the validity of official acts as those of an officer *de facto*. In the present case the plaintiff was the attorney of the members' of the Fitzsimmons council in the information against them. He knew the facts on which it was based and also that a demurrer to the information had been overruled, before the meeting which is now in question. He knew that their title was not only in question but in litigation at the time and that their right to act, in any capacity, depended upon the fact of plainly fraudulent votes, which he, himself, as town solicitor, had advised should be counted. The proceedings were pressed with vigor, so that there was no time to establish a reputation of title, by neglect to make the question, nor an acquiescence by delay in bringing the question to a settlement. If, in this state of affairs the plaintiff chose to submit his claim to that body he took the chance of its ultimate legality. Certainly he is not within the class of persons and the reason for which the rule in regard to *de facto* officers was established.

Reference has been made to a vote of the council holding over, passed at its meeting July 3, 1891, ratifying the acts of the council which was ousted, but we do not see that such a vote affects this case. If any effect can be given to the attempt to validate in a lump the acts of the ousted body it could only relate to acts done and it would neither bring the claim before the proper council nor make the presentation of it to the illegal body a presentation to the body whose duty it was to consider and pass upon it. The vote does not alter the fact that the claim was not presented to the town council of the town. The doctrine of ratification is often applied to municipal corporations where contracts have been made or acts have been done by persons who have undertaken to act for the corporation under a mistaken assumption of authority. But the doctrine has its limitations and cannot be applied to the same extent in public as in private matters; considerations of public policy are necessarily involved. 1 Dillon on Municip. Corp. § 547. And it has been held that where one cannot act as an agent by appointment he cannot be made an agent by ratification. *Harrison et al.* v. *McHenry*, 9 Ga.

164. Authority to bind the town could not be delegated to an illegal body and this wholesale attempt to ratify the acts of an illegal body goes far beyond any application of the doctrine of ratification of which we are aware. Councilmen are chosen to give the town the benefit of their judgment in the matters committed to them. These matters should be considered and acted upon, each on its merits, in an orderly way. We think the effort to bind the town by the acts of the ousted body, under the form of a ratification of the whole batch of its proceedings, with nothing to show separate consideration or deliberate judgment, was manifestly against public policy and therefore void, even if the acts of such a body could be ratified at all.

We are therefore of opinion that the presentation of the plaintiff's claim cannot be regarded as a presentation to a town council *de facto* and, consequently, that there has been no presentation to the town council as required by statute before commencing suit.

*Judgment for defendant.*

*Charles E. Gorman & Patrick J. Quinn*, for plaintiff.
*Benjamin M. Bosworth*, for defendant.