Kevin J. O'CONNELL et al.

v.

Thomas BRUCE et al.

No. 96–441–Appeal.

Supreme Court of Rhode Island.

May 4, 1998.

Thomas S. Brown, Gardner H. Palmer, Providence, for Plaintiffs.

Daniel Kemp Kinder, Marc DeSisto, Kathleen M. Powers, Robert G. Sullivan, Providence, for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

■ "What's in a name?"[1] Does a municipal enactment smell as sweet legally whether it is called a resolution, an ordinance, or, for that matter, by any other name? In the context of this case we must decide if a town council's resolution creating a pension fund for disabled police officers and firefighters ran afoul of enabling legislation authorizing the council to create the fund and to establish by ordinance all fund-related rules and regulations as it deemed necessary and expedient. Because the challenged resolution was in substance and effect the functional equivalent of an ordinance and because the General Assembly did not purport to prevent the council from creating the fund via a resolution, we conclude that the town's municipal pension fund was legally established when it was first created some forty years ago by a town council resolution rather than by an ordinance. Hence we reject this belated challenge to its validity.

The plaintiffs in this action are sixteen former police officers and firefighters of the town of West Warwick (town) who were disabled in the course of performing their duties. They have been and are now receiving disability-pension benefits from the town at the rate of two-thirds of their former salaries pursuant to a pension fund originally created by the town in 1957. The plaintiffs contend that this pension plan is technically invalid, void, and of no effect because it was passed by a town council resolution rather than by ordinance. Accordingly, plaintiffs argue, they are entitled under applicable state law to receive their full active-duty salary and benefits instead of the two-thirds-of-salary pension benefits they have been receiving.

In 1995 plaintiffs filed suit in the Kent County Superior Court, seeking to recover the difference between their full salaries and the amount they had received pursuant to the West Warwick pension plan. The Superior Court initially agreed with plaintiffs, declared the 1957 pension plan to be invalid, and granted summary judgment in their favor. However, before a final judgment could be entered, the tide turned in favor of the town when the General Assembly passed special curative legislation in 1995. This legislation purported to cure retroactively the alleged technical defect in the town's original resolution establishing the pension plan. After rejecting a host of constitutional challenges to this curative legislation, the Superior Court vacated its prior order and entered judgment in the town's favor.

Armed with a full quiver of claimed errors relating to this ruling, plaintiffs contend on appeal that the General Assembly's 1995 curative legislation violated the impairment-of-contracts clause in the United States and the Rhode Island Constitutions and flouted their rights to due process, equal protection, and just compensation. The defendants have cross-appealed, contending that our decision in *Chester v. aRusso*, 667 A.2d 519 (R.I.1995), should have controlled the Superior Court's determination.

However, because we are convinced that another issue is dispositive of this appeal, we do not reach these questions. Instead we conclude that the town's pension plan was validly created ab initio. Thus we need not address the constitutional challenges and other issues raised in these cross-appeals. For this reason we decline to comment on the propriety of the reasoning underlying the Superior Court's final decision in this matter but affirm its decision on other grounds.[2]

1. William Shakespeare, *Romeo and Juliet*, act II, sc. ii ("What's in a name? that which we call a rose by any other name would smell as sweet").

2. This court may affirm the Superior Court's judgment on any ground without passing on the rationale actually relied upon by the Superior Court to justify its ruling. *See State v. Nordstrom*, 529 A.2d 107, 111–12 (R.I.1987) (citing *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224, 230 (1937)); *Iannuccillo v. Zoning Board of Review of Warren*, 103 R.I. 242, 243, 236 A.2d 253, 254 (1967).

## Facts and Travel

In 1944 the General Assembly passed legislation for the benefit of injured police officers and firefighters. Entitled the "Relief of Injured and Deceased Fire Fighters and Police Officers Act," P.L.1944, ch. 1479, § 1, this statute is now codified at G.L.1956 chapter 19 of title 45 and is commonly known as the Injured on Duty (IOD) Act. *See generally Kaya v. Partington,* 681 A.2d 256 (R.I. 1996) (holding IOD Act is exclusive compensation remedy for injured police officers vis-á-vis a municipality and its officials). The IOD Act provides that municipal firefighters and police officers injured in the line of duty will continue to receive their full active-duty pay and benefits while they remain incapacitated and unable to perform their duties.

However, both before and after the 1944 IOD Act's enactment, the General Assembly passed various special acts authorizing certain of Rhode Island's thirty-nine cities and towns to create retirement pension funds that pay benefits to injured public safety officers at less than 100 percent of their active-duty pay. For example, the General Assembly passed special legislation in 1913 authorizing a Pawtucket ordinance that provided for a pension fund and disability-retirement benefits. *See St. Germain v. City of Pawtucket,* 119 R.I. 638, 382 A.2d 180 (1978). And in 1944 special legislation passed, authorizing a Cranston retirement ordinance paying between 50 and 55 percent of a firefighter's final preretirement annual salary. Recently, in *Palazzo v. DeLuca,* 694 A.2d 747, 748 (R.I.1997), we had occasion to consider that special legislation. We held there that neither the IOD Act nor a 1990 amendment thereto (adding § 45–19–19 and authorizing the state's other cities and towns to adopt two-thirds-of-salary pension plans) superseded that municipality's earlier-enacted special pension legislation.

The General Assembly passed similar special pension legislation in 1972 for the town of Johnston that provided that police officers

there should receive disability benefits upon retirement of not less than 30 percent of their final annual salaries. We held in *Chester v. aRusso,* 667 A.2d at 522, that the Johnston special legislation merely set a floor regarding the level of retirement benefits payable to injured public safety officers and that the town could, through a collective-bargaining agreement (CBA), agree to pay a higher level of benefits.[3]

On April 12, 1956, the General Assembly passed similar special pension-authorizing legislation for the town of West Warwick. Public Laws 1956, chapter 3698, entitled "An Act Authorizing the Town of West Warwick to Establish a Pension Plan for Policemen and Firemen" (1956 special act), provided as follows:

"SECTION 1. *The town council of the town of West Warwick is hereby authorized and empowered to create and disburse a pension fund* or funds for officers and members of the police and fire departments of said town, who by reason of age, physical or mental infirmity, injuries sustained or illness incurred while in the performance of duty, or for other causes, may be unfit to perform active duty.

"SEC. 2. *The town council of said town is hereby authorized and empowered to* collect and divert to said fund or funds not more than 5% of the annual salary due to each such officer and member, and from time to time appropriate from the general funds of said town such sums of money as may be necessary for the proper carrying out of the purposes of this act and *to establish by ordinance all rules and regulations pertaining to said fund or funds as to it shall seem necessary and expedient."* (Emphases added.)

In April of the following year West Warwick created the first of a series of pension funds for its disabled police and fire employees. These funds eventually provided that any such officer or firefighter who was injured in the line of duty and who received

---

**3.** We also opined in *Lanni v. Ferrante,* 688 A.2d 865, 866 (R.I.1997), that a town could also modify its obligations under G.L.1956 § 45–19–1 by opting into the Municipal Employees Retirement System pursuant to G.L.1956 § 45–21–4. Thus the town of North Providence was authorized to pay an injured police officer retirement benefits based upon two-thirds of the officer's salary. 688 A.2d at 866.

full salary and benefits for more than eighteen continuous months would be involuntarily retired. Thereafter, he or she would receive a disability-pension disbursement based upon two-thirds of his or her final annual salary (1957 pension plan). It is undisputed that this pension fund was created by town council resolution rather than by ordinance and that before this action commenced, the town had never promulgated by ordinance any fund-related rules and regulations separate from the resolution creating the fund itself.

The record in this case and the parties' representations through counsel at oral argument suggest that such a fund was in effect at all times since 1957 and that the 1957 pension plan, or one of its direct descendants, was either expressly referenced in and/or incorporated into CBAs between the town and Local No. 312 of the International Brotherhood of Police Officers (IBPO) and Local No. 1140 of the International Association of Fire Fighters, AFL–CIO (IAFF), from at least 1988 onward. For example, the CBA between the town and the IBPO for the period 1988 through 1991 contained a section 16 that read as follows:

> "SECTION 16.—INJURIES AND ILLNESSES.
>
> (A) Members of the Police Department who shall or have become incapacitated by reason of injury or illness contracted in the line of duty shall be covered pursuant to the General Laws of the State of Rhode Island, Chapter 45–19, Section 1, as amended, *or until they are placed on disability pension.*" (Emphasis added.)

All the plaintiffs in this case were members of these unions and hence covered by one or more of the CBAs that included provisions relating to the town's pension plan. During the late 1980s and early 1990s, at least six plaintiffs executed documents entitled either "Employment Termination Agreement and Release" or "Retirement Agreement and Release" (retirement agreement) whereby plaintiffs accepted retirement and

were placed on "disability pension under Section 16 of the [CBA]."[4] Some of the retirement agreements further specified that the retiree "acknowledges and agrees that said disability pension is calculated in accordance with the terms of the collective bargaining agreement, Section 16(C) and that the calculation of the pension to be received by [retiree] is based on two-thirds of the salary of his rank at the time of retirement." Others contain similar language to the same effect. The retirement agreements also expressly released the town from any liability under the IOD Act.

The record also suggests that at some point in 1991 the town became concerned that its pension plans should have been created in the form of an ordinance rather than by a resolution. These concerns heightened in 1994 when the Internal Revenue Service (IRS) apparently audited several of the municipal pension plans created by cities and towns throughout the state. After discovering that West Warwick's 1957 pension plan had been established by a resolution, the IRS apparently informed the town that it considered the plan to be invalid. The IRS then delivered tax-deficiency notices to each plaintiff, seeking back taxes. Because plaintiffs' two-thirds-salary pension benefits had been paid pursuant to a municipal pension plan that the IRS considered to be invalid, it deemed those payments to be taxable, notwithstanding that benefits paid under a valid pension plan are normally afforded preferential tax treatment.

The plaintiffs then filed suit in the Superior Court. Alleging that the West Warwick pension plan was invalid, plaintiffs claimed that they were entitled to full benefits under the IOD Act because its provisions controlled in the absence of a valid pension plan. As noted above, the Superior Court initially accepted this theory and granted plaintiffs' motion for summary judgment. The court deferred entering a final judgment, however, because it was aware that certain legislative initiatives were afoot that might affect its decision.

---

4. The record contains retirement agreements executed by plaintiffs Brown, Fitts, Hart, Osenkowski, Sousa, and Ventura.

These solonic stirrings culminated in the enactment of Public Laws 1995, chapter 40 (the 1995 act or curative act), which amended the town's 1956 special act originally granting West Warwick the authority to create a pension plan. The 1995 curative act purported to revise section 2 of the 1956 special pension-legislation act to read,

"The town council of said town is hereby authorized and empowered * * * to establish *by ordinance or resolution* all rules and regulations pertaining to said fund or funds as to it shall seem necessary and expedient." P.L.1995, ch. 40, § 2. (Emphasis added.)

The curative act further provided that "[a]ll actions taken by the West Warwick town council by ordinance or resolution pursuant to chapter 3698 of the public laws of 1956, from and after the effective date of said chapter, are hereby ratified, approved and confirmed in all respects." *Id.* "The provisions of this act shall be given retroactive as well as prospective effect and shall apply to all cases pending upon the effective date of this act, and this act shall take effect upon passage." P.L.1995, ch. 40, § 4. The town also passed two ordinances purporting to cure the alleged technical defect and adopted, this time by formal ordinance, a revised version of the pension plan, which version would operate prospectively.

Following a referendum whereby West Warwick voters approved the General Assembly's 1995 curative act, the Superior Court revisited its prior grant of summary judgment in favor of plaintiffs and decided that the 1995 curative legislation retroactively validated the town's 1957 pension plan. Consequently the court held that the provisions of the 1957 pension plan superseded the provisions of the IOD Act after a police officer or a firefighter retired with a disability pension. Thus the trial court determined that plaintiffs were entitled only to the two-thirds-of-salary benefits that they had already received under the town's pension plan as referenced in the various CBAs. As noted, the trial justice also rejected plaintiffs' contentions that the 1995 curative legislation unconstitutionally interfered with their vested contract rights under the IOD Act and

denied them due process, equal protection, and just compensation.

We are of the opinion that the trial justice properly entered judgment for the town. However, we express no opinion about whether the General Assembly's attempt to cure a procedural defect in the original West Warwick pension plan was legally sound. Rather we hold that the pension plan established by resolution under Public Laws 1956, chapter 3698, and widely recognized as valid for nearly four decades by all concerned, was indeed validly enacted ab initio and thus needed no curative legislation to remedy its putative legal infirmity.

### Analysis

Section 1 of the 1956 special legislation (P.L.1956, ch. 3698) benefiting the town of West Warwick states that the town council is "authorized and empowered to create and disburse a pension fund." No mention is made in that section of the method or mode by which the fund could be created. Section 2 of the 1956 special legislation, however, states that "rules and regulations pertaining to said fund" may be "establish[ed] by ordinance." We agree with the observations of the trial justice in her initial bench decision granting summary judgment for plaintiffs that in some sense "[t]he [pension] plan itself is a series of rules and regulations which create the pension fund and provide for its administration and disbursement." However, we disagree with the trial justice's conclusion that "[i]t would be illogical, therefore, to read the [1956 special legislation] as permitting the creation and disbursement of the pension fund by ordinance or resolution but requiring that all rules and regulations pertaining to the fund be enacted by ordinance." We are of the opinion that, according to the enabling legislation, neither the fund itself nor the rules and regulations pertaining to its disbursement must of necessity be created by ordinance. First, the enabling legislation does not specify a particular method for the town council to use in creating the fund. Second, it is only those rules and regulations pertaining to the fund that seem necessary or expedient to the town council that are authorized to be established by ordinance. This does not mean that *all* rules and regula-

tions pertaining to the fund must be established by ordinance but only those—if any—that seem necessary and expedient to the town council. Thus the enabling legislation does not require the town council to enact any rules or regulations pertaining to the fund it has been authorized to create, much less does it require the council to do so only by the enactment of ordinances. Indeed, if the town council's enactment of the fund via a resolution contained enough direction concerning how it was to work and to be administered, the council may well have concluded that no rules or regulations would be necessary or expedient for the fund to work as it was intended.

The structure and the purpose of this special legislation also indicate to us that the General Assembly intended that such a pension plan could be created by whatever means a town council could lawfully act on a matter properly before it. The first section of the act authorizes the town council to create the pension fund without specifying how it is to do so, and there is nothing in the act to suggest that the language it chose in the second section to authorize the adoption of fund-related rules and regulations by ordinance was intended to mean that the fund itself could only be created by an ordinance. Thus there is nothing in the enabling legislation that suggests that the General Assembly actually intended to preclude the town council from creating a pension fund by adopting a formal resolution at a public town council meeting. And perhaps most telling of all, we note that there is nothing in the language of the enabling legislation to suggest that such a resolution would be invalid simply because it was not then or later embodied in the form of an ordinance.

■ In reaching this conclusion, we acknowledge that a municipal ordinance differs in some important respects from a resolution:

"The term 'ordinance' means something more than a mere verbal motion or resolution * * *. It must be invested, not necessarily literally, but substantially, with the formalities, solemnities, and characteristics of an ordinance, as distinguished from a simple motion or resolution.

"A resolution in effect encompasses all actions of the municipal body other than ordinances. * * * In this connection it may be observed that a resolution deals with matters of a special or temporary character; an ordinance prescribes some permanent rule of conduct or government, to continue in force until the ordinance is repealed. An ordinance is distinctively a legislative act; a resolution, generally speaking, is simply an expression of opinion or mind or policy concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality." 5 E. McQuillin, *The Law of Municipal Corporations* § 15.02, at 58–59 (3d ed.1996).

■ Nonetheless it is also commonly recognized that "[s]ometimes, however, the word 'ordinance' is used interchangeably with the words 'bylaws,' 'resolutions,' 'regulations,' 'orders,' and 'motions.'" *Id.*, § 15.08 at 84. Indeed, "[g]enerally, whether what is done by a municipal legislative body is an ordinance or a resolution depends not on what the action is called but on the reality. * * * *[W]here a resolution is in substance and effect an ordinance or permanent regulation, the name given to it is immaterial.*" *Id.*, § 15.02 at 60. (Emphasis added.) Similarly, "*[a] resolution* has also been characterized as only a less solemn or less usual form of an ordinance. * * * However, it *is an ordinance still if it is anything intended to regulate any of the affairs of the municipality, and if it is in substance and effect an ordinance.*" *Id.*, § 15.08 at 85. (Emphases added.)

We conclude that although it may have been preferable for the West Warwick town council to have established its 1957 pension plan using the formal procedures associated with the enactment of an ordinance, it is clear that the town council "intended to regulate" the affairs of the municipality when it created the 1957 pension fund and that the resolution it passed to that end was "in substance and effect an ordinance" sufficient to satisfy the hortatory guidelines and legislative intent reflected in the General Assem-

**680**

bly's 1956 enabling statute. We consequently hold that the pension plan's passage as a resolution in 1957 was sufficient to satisfy the objective intentions of the General Assembly as they were embodied in the text of Public Laws 1956, chapter 3698. Because the pension plan was therefore valid and effective at all times pertinent to this litigation, the General Assembly's 1995 curative legislation should be viewed as merely clarifying its intentions with respect to the earlier-enacted P.L.1956, ch. 3698 and as having no effect on the validity of the 1957 pension plan or on the character of any agreements made or benefits disbursed pursuant to that pension plan.

We also take comfort in the knowledge that all parties to this litigation have previously accepted this pension fund as completely valid and have taken steps to change their respective positions in reliance on its validity. Thus our decision affords to all parties exactly the rights and obligations they expected, bargained for, and accepted without question before the alleged technical problem with the town's pension plan first surfaced. We also note that this pension plan was referenced and incorporated into a series of formal CBAs. Presumably these CBAs were vetted through the town's normal administrative and budgetary procedures for the review and approval of such matters and thus received the usual attendant public scrutiny accorded to such contracts.

Accordingly we hold that the town's pension plan was not invalid merely because it was originally created by resolution rather than by ordinance. The plaintiffs' specifications of error relating to the alleged constitutional problems flowing from the General Assembly's curative legislation and relating to the town's attempt retroactively to adopt the pension plan in ordinance form are thereby rendered moot. Thus we do not reach those issues, nor need we decide the single issue raised in the defendants' cross-appeal.

### Conclusion

For the foregoing reasons the plaintiffs' appeal is denied, the town's cross-appeal is denied, and the judgment of the Superior Court is affirmed.

BOURCIER, J., did not participate.