June 9, 2023

**Supreme Court**

No. 2021-279-Appeal.
(PC 09-843)

Erin Beaudry, in her capacity as          :
Personal Representative of the Estate of
       Armand Beaudry

                    v.                     :

Randy Rossi, in his capacity as Finance   :
   Director/Treasurer for the Town of
            Smithfield.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Erin Beaudry, in her capacity as   :
Personal Representative of the Estate of
Armand Beaudry

v.              :

Randy Rossi, in his capacity as Finance  :
Director/Treasurer for the Town of
Smithfield.

Present: Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The plaintiff, Erin Beaudry, in her capacity as Personal Representative of the Estate of Armand Beaudry (Beaudry),[1] appeals from a Superior Court judgment in favor of the defendant, Randy Rossi, in his capacity as Finance Director/Treasurer for the Town of Smithfield (Smithfield or the town), following the grant of the defendant's motion for summary judgment and the dismissal of the plaintiff's amended complaint without prejudice. The

---

[1] Armand Beaudry filed his complaint, initiating this action, on February 11, 2009. He litigated the case until his death in December 2018. In November 2019, Erin Beaudry, Armand's widow, filed a motion in the Superior Court to substitute herself, in her capacity as the personal representative of her husband's estate, to continue the litigation. A justice of the Superior Court granted the motion and the case continued. Throughout this opinion, we refer to Erin Beaudry, in her capacity as personal representative of her husband's estate, and Armand Beaudry collectively as "Beaudry." No disrespect is intended.

plaintiff asks this Court to reverse the hearing justice's decision on the motion for summary judgment and remand this matter to the Superior Court for further proceedings. For the reasons set forth herein, we vacate the judgment of the Superior Court.

## I

## Facts and Travel

This matter arises from a dispute over the calculation of plaintiff's pension benefits; however, the merits of that dispute are not before this Court. We include only those facts necessary to address the issues presented on appeal. The essential facts are not disputed.

Armand Beaudry worked as a firefighter for the town from 1983 to 2004. On July 28, 2004, the town placed Beaudry on disability retirement. Beaudry's retirement benefits were governed by a pension system that the town had made effective for its firefighters in July 1977. Smithfield's pension system constituted "an amalgamation of various documents"—the collective bargaining agreement (CBA) between the town and the firefighters' union, a general annuity contract (the plan) administered by John Hancock Mutual Life Insurance Company (John Hancock), and a series of amendments to the plan.

The most salient document with respect to the case at bar is the eighth amendment to the plan (Amendment 8), specifically the language found in

Amendment 8, Section 21.[2]  Section 21 provides that the "[p]lan [a]dministrators shall have the *exclusive right* to interpret the [p]lan and to decide *any matters arising thereunder * * *.*"[3] (Emphasis added.)  Amendment 8 was initially proposed around 1996, but the town council never signed the amendment or voted on it, as required by the Smithfield town charter.  In a series of letters exchanged between 1996 and 1997, John Hancock continually requested that the town sign Amendment 8 and repeatedly reminded the town that Amendment 8 "ha[d] been unsigned for some time" and was "still outstanding."  From the time Amendment 8 was originally proposed until Beaudry's retirement in 2004, the town council executed several other amendments to the plan, but never Amendment 8.

In October 2004, Beaudry received a notice from John Hancock confirming the amount of his disability retirement benefits, which Beaudry disputed.  Over the next few years—from roughly October 2004 to April 2006—Beaudry, the town, and John Hancock attempted to resolve the dispute over the calculation of Beaudry's benefits.

---

[2] Amendment 8 was designed to "restate[] and summarize[] the [plan] and all subsequent amendments" up to that point in time.  Although Beaudry correctly points out that, technically, there were two versions of Amendment 8—the original from 1996 and a revised version from 1997—the pertinent language is identical, so we do not distinguish between them for the purpose of this appeal.  The plan administrator provision can be found in Section 21 of the revised version and Section 20 of the original.

[3] The plan administrators are the members of the Smithfield town council.

During this period, Amendment 8 became relevant because it defined the firefighters' compensation favorably for the town. But the town manager expressed some concern that Amendment 8 had never been signed. In an email dated April 3, 2006, from the town solicitor to the town treasurer, the town solicitor advised, "Even though [Amendment 8] was not signed by the Town, it accurately reflects the terms of the policy. We don't want to raise any questions as to the validity of the amendment at this point." The town consulted with John Hancock to ascertain whether Amendment 8 was, in fact, in effect and controlling as to Beaudry's claim. After consulting with John Hancock, the town informed Beaudry of its final determination that the plan indeed did not provide the benefits he claimed.

Beaudry contacted the town about his claim two more times but received no response. Then, on June 13, 2008, Beaudry filed a notice of claim with the town pursuant to G.L. 1956 § 45-15-5, which provides a statutory remedy for claimants proceeding against municipalities for monies owed.

The town did not respond to Beaudry's notice of claim, so he proceeded to file a complaint in the Providence County Superior Court against Randy Rossi, in his capacity as Finance Director/Treasurer for the town. The town filed an initial answer to Beaudry's complaint; thereafter, the case went to court-annexed arbitration. On April 7, 2016, an arbitration award entered in favor of Beaudry. The town filed a rejection of the award the next day.

About two years later, on January 12, 2018, the town moved to amend its answer to Beaudry's original complaint. Beaudry objected, and a justice of the Superior Court held a hearing on the motion. After the hearing, the Superior Court granted the town's motion to amend its answer. The town filed its amended answer to Beaudry's original complaint the same day.

The town's amended answer raised four affirmative defenses, including Beaudry's failure to exhaust administrative remedies as required by the plan. Beaudry amended his complaint in turn. The amended complaint raised two counts against the town, one for breach of contract seeking money damages and another for declaratory judgment regarding the parties' "rights, status, and legal relations" arising under the CBA and the plan with respect to the calculation of Beaudry's disability benefits. The town then filed an answer to Beaudry's amended complaint, asserting the same affirmative defenses as set forth in its previously filed amended answer.

On February 26, 2020, the town filed a motion for summary judgment as to all counts in Beaudry's amended complaint. Beaudry filed a cross-motion for summary judgment on count two of the amended complaint for declaratory judgment.

A second justice of the Superior Court (the hearing justice) ultimately held three separate hearings to resolve the town's motion for summary judgment and

Beaudry's cross-motion for summary judgment. The hearings and memoranda yielded the following factual assertions and arguments from the parties.

Overall, the town argued that Amendment 8, Section 21 required Beaudry to exhaust the administrative remedy with the plan administrators before seeking adjudication of his claim in court. Beaudry challenged the validity of Amendment 8 because the town council never formally signed or voted on it pursuant to the procedures set forth in the Smithfield town charter. According to Beaudry, no administrative remedy existed at the time of his retirement because the town council had never enacted Amendment 8.

The town did not dispute that Amendment 8 was never formally enacted. Instead, the town argued that Amendment 8 had become effective through the CBA because the CBA incorporated the entire plan by reference. The evidence presented at the hearings established that the town council and the firefighters' union bargain for and approve new iterations of the CBA "from time to time[,]" about every three years. The town posited that, because Amendment 8, Section 21 was incorporated by reference into the CBAs from 1997 to 2006—which were all properly adopted by the town council—the town enacted Amendment 8 derivatively through the CBAs.

The town further contended that, even though Amendment 8 was never signed, subsequent amendments, which presupposed the effectiveness of Amendment 8, were properly passed, specifically Amendments 9 and 10. The town

argued that Amendments 9 and 10 "necessarily ratified" Amendment 8 because they were "built upon and dr[e]w their essence from Amendment 8" and therefore "do[] not make any sense without Amendment 8." The town submitted a slew of affidavits from various town and union officials, which attested to a collective assumption that Amendment 8 was in effect. Beaudry did not rebut these affidavits.

In fact, Beaudry did not dispute any of the facts submitted by the town. Beaudry's entire argument rested on the legal conclusion that Amendment 8 could not be constructively ratified by the CBA or other amendments, as the town contended.

After the first two hearings, the hearing justice found that Amendment 8 was in effect at the time of Beaudry's retirement. In reaching this conclusion, she agreed with the town that this Court's holdings were instructive, citing *Elliott v. Town of Warren*, 818 A.2d 652 (R.I. 2003), and *O'Connell v. Bruce*, 710 A.2d 674 (R.I. 1998). Following our caselaw, she reasoned that, even though "procedural niceties" were not followed, the intention and substance of the town's actions were clear. Specifically, the hearing justice noted, Amendments 9 and 10 were both signed and "would not have come into existence but for Amendment 8; and, in fact, were built on and presupposed the existence of Amendment 8."

Further, she noted that the 1997 to 2000 CBA, which contained language from Amendment 8, was adopted by a vote of the town council. "In the same vein," the

hearing justice observed, "the town council itself ratified the 2000 to 2003 CBA, which again incorporated at that point Amendments 8, 9, 10." She recognized that the 2003 to 2006 CBA, covering the period of Beaudry's retirement, also incorporated Amendment 8. Finally, the hearing justice was persuaded by Beaudry's failure to rebut the town's affidavits, which showed that town officials operated as though Amendment 8 had been in force for decades. As such, the hearing justice ruled that Amendment 8 was incorporated into the plan and created an administrative remedy for Beaudry's claim.

At the third and final hearing, the hearing justice granted the town's motion for summary judgment and dismissed the complaint without prejudice so that Beaudry might raise it before the plan administrators. Although she acknowledged that the town had waited until 2018 to raise its affirmative defenses, "years and years after the complaint had been filed, and after * * * years of communication and correspondence[,]" she did not find the delay to be dispositive. Rather, the hearing justice concluded, the Superior Court

> "having allowed the affirmative defense to be raised and having ruled that Amendment 8 is effective, that means that the plan administrator does have the exclusive right to determine issues regarding the plan, and it's irrefutable that the plaintiff did not present the claim to the plan administrator and has not exhausted the administrative remedies."

An order and judgment entered on September 13, 2021,[4] granting the town's motion for summary judgment and dismissing Beaudry's complaint without prejudice. Beaudry filed a timely notice of appeal on September 21, 2021.

## II

## Standard of Review

"This Court reviews a grant of summary judgment *de novo*." *Coccoli v. Town of Scituate Town Council*, 184 A.3d 1113, 1117 (R.I. 2018) (brackets omitted) (quoting *Sullo v. Greenberg*, 68 A.3d 404, 406 (R.I. 2013)). "It is a fundamental principle that summary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Botelho v. City of Pawtucket School Department*, 130 A.3d 172, 176 (R.I. 2016) (brackets omitted) (quoting *The Law Firm of Thomas A. Tarro, III v. Checrallah*, 60 A.3d 598, 601 (R.I. 2013)). Accordingly, we will affirm the hearing justice's decision "only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Andrews v. Lombardi*, 231 A.3d 1108, 1127

---

[4] The final order and judgment that entered are captioned as "Amended Order" and "Amended Judgment," respectively. The amended order and judgment changed the case caption to reflect that the party in interest on appeal is Erin Beaudry, in her capacity as Personal Representative of the Estate of Armand G. Beaudry, Jr.

(R.I. 2020) (quoting *Cranston Police Retirees Action Committee v. City of Cranston*, 208 A.3d 557, 580-81 (R.I. 2019)).

"In a motion for summary judgment, the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Quattrucci v. Lombardi*, 232 A.3d 1062, 1065 (R.I. 2020) (quoting *Cranston Police Retirees Action Committee*, 208 A.3d at 581). "However, it is not an absolute requirement that the nonmoving party file an affidavit in opposition to the motion" to establish a genuine issue of material fact. *Capital Properties, Inc. v. State*, 749 A.2d 1069, 1080 (R.I. 1999).

## III

## Discussion

The travel of this case through the Superior Court has amassed a voluminous record containing over a decade's worth of correspondence, motions, exhibits, and memoranda. From a global perspective, this case encompasses complex matters of municipal, arbitration, administrative, and contract law, all of which were thoroughly briefed and argued before a justice of the Superior Court. The matter before this Court, however, boils down to two discrete issues.

First, we are asked to review whether the hearing justice erred by finding that Amendment 8 was enforceable at the time of Beaudry's retirement, thus creating an

administrative remedy that Beaudry failed to exhaust. Second, we are asked to review whether the hearing justice erred by finding that the town did not forfeit its affirmative defense relative to Beaudry's failure to exhaust administrative remedies. We review these claims of error in turn.

The import of Amendment 8 is that, if the amendment were in place at the time of Beaudry's retirement, then it created an administrative remedy for Beaudry's claim that he failed to exhaust.[5] The language in Amendment 8, Section 21 is clear. It grants the town council, sitting as plan administrators, exclusive authority to review all claims arising thereunder. The issue before this Court is whether Amendment 8 was incorporated into the plan such that the administrative remedy existed at the time of Beaudry's retirement.

On appeal, the town "readily acknowledges that Amendment No. 8 * * * was not executed in a traditional sense * * *." The town notes, however, that the plan provided, "subject to the laws of the State of Rhode Island[,]" that it "may be modified at any time by written agreement between * * * John Hancock and the Contract Holder[,]" the contract holder being the town. The town contends that an agreement in writing "can be readily seen from the series of letters that [John Hancock] sent to the Town seeking the Town's signature on Amendment No. 8."

---

[5] It is undisputed that Beaudry never brought his claim before the town council prior to initiating this action in the Superior Court.

- 11 -

Additionally, the town avers, the fact "that the Town agreed in writing to Amendment No. 8 can be readily seen from the letter it sent to the Union in which it sought to obtain the Union's acceptance of Amendment No. 8." This reasoning is consistent with the town's broader assertion that Amendment 8 was validly enacted by ratification.[6]

It is clear that the town may amend the pension plan only according to the process established in the town charter. *See Kells v. Town of Lincoln*, 874 A.2d 204, 211 (R.I. 2005) ("The provisions of a town charter are the organic law of the town with respect to municipal affairs.") (quoting *Borromeo v. Personnel Board of Bristol*, 117 R.I. 382, 385, 367 A.2d 711, 713 (1977)). The parties do not dispute that the town charter controls, and so we begin there.

The Smithfield town charter provides in relevant part: (1) "[a]ll powers of the Town shall be vested in the Town Council, except as otherwise provided by law or this Charter"; (2) "[n]o action of the Council * * * shall be valid or binding unless

---

[6] The town stated in its brief that "the Town had the power to ratify Amendment No. 8[,]" referencing the town manager's powers under the town charter, § 3.04(11), and this Court's general principles concerning ratification. *See* Smithfield Town Charter, Art. III, § 3.04(11) (Dec. 18, 2014). We perceive this to be a rather specious application of the ratification doctrine. The caselaw upon which the town relies is distinguishable and inapposite to the case at bar. *See Buonanno v. DiStefano*, 430 A.2d 765, 769 (R.I. 1981) (discussing ratification in the context of a personal agency relationship); *Murphy v. Moies*, 18 R.I. 100, 104, 25 A. 977, 978-79 (1892) ("The doctrine of ratification is often applied to municipal corporations, * * * [b]*ut the doctrine has its limitations*, and *cannot be applied to the same extent in public*, as in private, matters * * *.") (emphasis added).

- 12 -

adopted by the affirmative vote of three (3) or more members of the Council"; (3) acts of the town council "other than those [which may only be done by Ordinance] may be done either by Ordinance or by Resolution"; and (4) "[t]he Town Manager shall be the Chief Administrative Officer of the Town, responsible to the Council for the administration of all Town affairs placed in the Manager's charge by or under this Charter. The Town Manager shall * * * [p]erform such duties as are specified in this Charter or which may be required by the Town Council." Smithfield Town Charter, Art. II, §§ 2.01, 2.11(c), 2.12(9), Art. III, § 3.04(11) (Dec. 18, 2014).

A plain reading of the Smithfield town charter indicates that the power to change the pension plan was reserved for the town council. *See Foster Glocester Regional School Building Committee v. Sette*, 996 A.2d 1120, 1126 (R.I. 2010) ("When the language of the charter is clear and unambiguous, the court must interpret it literally, giving the words of the charter their plain and ordinary meanings." (brackets omitted) (quoting *Stewart v. Sheppard*, 885 A.2d 715, 720 (R.I. 2005))); *Middle Creek Farm, LLC v. Portsmouth Water & Fire District*, 252 A.3d 745, 751 (R.I. 2021) ("[I]t is the accepted rule that the provisions of city charters should be construed so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question." (quoting *Felkner v. Chariho Regional School Committee*, 968 A.2d 865, 870 (R.I. 2009))).

Under the charter, the town council had two paths available to amend the plan: (1) by an action adopted by an affirmative vote in accordance with § 2.11(c) or (2) by authorizing an agent of the town to act on its behalf, as provided, for example, in § 3.04(11). There is no evidence in the record that the town council authorized any town official to act on its behalf.[7] Accordingly, we conclude that the only option whereby the town council might have enacted Amendment 8 was through an action adopted by an affirmative vote of three or more members of the town council. *See* Smithfield Town Charter, § 2.11(c).

Before this Court, Smithfield does not dispute that the town council never voted on Amendment 8. Rather, the town postulates that votes taken on other related matters ratified Amendment 8 implicitly. We examine this proposition carefully. Although our caselaw accords municipalities a wide berth to comply with the procedural formalities set forth in their charters, we have also stated that a line must be drawn where the municipality's actions amount to "a radical departure from accepted municipal practice." *Elliott*, 818 A.2d at 656-57. Here, we must decide where the town's actions fall on the spectrum ranging from permissible, accepted practices to impermissible, radical departures.

---

[7] For example, the town council authorized Alberto J. LaGreca, Jr., the then-town council president, to authorize Amendment 9 on its behalf.

- 14 -

As to the former, in *O'Connell v. Bruce*, this Court upheld a pension plan that the town charter required to be enacted by *ordinance*, even though the town, instead, effectuated it by *resolution*. *O'Connell*, 710 A.2d at 677-78, 680. We rejected the plaintiff's argument that the town's technical error invalidated the pension fund *ab initio* because it was "clear that the town council intended to regulate the affairs of the municipality" and that "the resolution it passed to that end was *in substance and effect* an ordinance[.]" *Id.* at 679 (internal quotation marks omitted) (emphasis added).

We reached a similar conclusion in *Elliott v. Town of Warren*. *Elliott*, 818 A.2d at 656. In *Elliott*, the plaintiff challenged whether a municipal plan properly governed his disability benefits. *Id.* at 654. He argued that the town's enrollment in the municipal plan was faulty because it enrolled through an affirmative vote by the town council, rather than by an ordinance or a resolution, as required under the applicable statute. *Id.* at 654, 656. We held that "the fact that the Town Council opted to accept by an affirmative vote the provision of the police contract * * * is of no moment to the validity of the town's participation in [the municipal plan]." *Id.* at 656. There again, this Court prioritized the substance of the town council's action over adherence to formalities. *See id.*; *O'Connell*, 710 A.2d at 679.

By contrast, our opinion in *Casa DiMario, Inc. v. Richardson*, 763 A.2d 607 (R.I. 2000), illustrates that this Court looks with disfavor upon municipal actors who

- 15 -

egregiously violate formal procedures. *Casa DiMario*, 763 A.2d at 610. In *Casa DiMario*, this Court declined to affirm a consent order executed by a town solicitor acting without proper authority from the town. *Id.* Critically, we reasoned that

> "[the plaintiff's] professed reliance upon private discussions with and alleged statements *by individual members of the council*, the town clerk, and/or the solicitor to representatives of [the plaintiff's] and *upon the town's alleged past practices* of allowing the solicitor to settle certain cases * * * *without a formal prior vote of the council* were misplaced and unjustified." *Id.* at 610-11 (emphasis added).

We cautioned that "[c]ommunications, representations, and alleged acts of this kind are insufficient as a matter of law to bind a municipality to future acts or inaction." *Id.* at 611.

Keeping this spectrum of acceptability in mind, we hold that the town did not properly enact Amendment 8. Much like *Casa DiMario*, the town impermissibly relies on the actions and statements of individual town officials—through affidavits, letters, and correspondence between certain members of the town council, the union, and John Hancock—as evidence of Amendment 8's effectiveness. And unlike *O'Connell* and *Elliott*, the matter before us here is not simply a question of substance over form. *See O'Connell*, 710 A.2d at 679 (reasoning that "what is done by a municipal legislative body * * * depends *not on what the action is called* but on the reality") (emphasis added) (quoting 5 E. McQuillin, *The Law of Municipal Corporations* § 15.02, at 60 (3d ed. 1996)); *Elliott*, 818 A.2d at 656 (holding that

- 16 -

"[t]he procedure utilized by [the town] in voting to approve a police contract * * * did not run afoul of the enabling legislation and was *in substance and effect* a formal, public entry into the pension system") (emphasis added). The error here is that the town council never took any action at all with respect to Amendment 8, specifically.

Moreover, we reject the town's argument that affirmative votes and/or signatures taken on other amendments to the plan and the CBAs implicitly adopted Amendment 8. First, the town contends that the signatures approving Amendments 9 and 10 ratify Amendment 8 by implication because those amendments "only make[] sense if Amendment No. 8 was the [p]lan being amended."

Amendment 10 modified and substituted certain page numbers of different sections in the plan. The previous page numbers in the plan that Amendment 10 updated were the page numbers used in Amendment 8, and only Amendment 8. Because the page-number format used in Amendment 8 was unique to that iteration of the plan, the town concludes, the contracting parties could not have been confused about which version of the plan Amendment 10 was modifying. This contention is unavailing. The fact that the town council and John Hancock "were well aware of the existence * * * of Amendment No. 8 * * * when they executed Amendment No. 10[,]" is not sufficient to evince that Amendment 10, itself, intentionally and separately authorized Amendment 8. Even assuming *arguendo* that the town council did intend for Amendment 10 to enact Amendment 8, the town cannot circumvent,

- 17 -

wholesale, the procedures outlined in the town charter. *See* Smithfield Town Charter, § 2.11(c).

Similarly, the town contends that "Amendment No. 9 assumed the effectiveness of, and built on, Amendment No. 8." Because the town council voted to pass Amendment 9, the town suggests, Amendment 8 was simultaneously approved. This assertion is tenuous on its face but, more importantly, is not supported by the evidence in the record.

Smithfield avers that the town council understood the two amendments to operate in tandem by virtue of the successive alphabetical ordering of the subsections contained therein—Amendment 8 ended its definition section with subsection (y); Amendment 9 added a new definition for rollover contributions as subsection (z). However, even though the town council approved the substance of Amendment 9 by a vote in April 1996, the full amendment with the pertinent subsection (z) formatting was not signed by the town council president and John Hancock until months later.[8] This delay is significant because it shows that the town council was unaware of any connection between Amendments 8 and 9 when the vote on Amendment 9 was held. Nothing in the meeting minutes from the April vote mentions the alphabetical formatting or otherwise indicates that the town council understood that any

---

[8] The town council president signed Amendment 9 on August 30, 1996, and John Hancock signed it on September 17, 1996.

relationship existed between Amendments 8 and 9. In fact, the April meeting minutes indicate that the town council did not reference "Amendment 9" as such, it merely discussed the substance of the amendment to add pension rollover contributions to the plan. Therefore, we conclude that the passage of Amendment 9 is immaterial to the effectiveness of Amendment 8.

Next, the town contends that Amendment 8 was ratified inherently as part of the approved CBAs because the 1997 to 2006 CBAs incorporated the plan by reference. The town also notes that the CBAs were enacted through the town's normal administrative and budgetary procedures. Essentially, the town asks this Court to conclude that Amendment 8 was part of the plan because the plan was part of the CBA. That reasoning is tautological. We cannot know or assume that Amendment 8 ever became integrated into the plan, as it was generally incorporated into the CBAs, without establishing how Amendment 8 became effective to begin with. Therefore, we do not perceive that the town council's periodic votes ratifying the CBAs constituted official actions sufficient to render Amendment 8 effective.

The town also contends that the affidavits it submitted from Rossi and other town officials offer proof that the parties involved—the town, the union, and John Hancock—all "considered and treated Amendment No. 8 as effective as if it was formally signed * * *." More specifically, the town argues that these parties "have taken steps to change their respective positions in reliance on [Amendment 8's]

validity." This Court held in *Casa DiMario* that reliance on "the town's alleged past practices"—without a vote of the town council—is unjustified. *Casa DiMario*, 763 A.2d at 610-11. Further, the 2006 email between town officials warning that it was in the town's best interest not "to raise any questions" about Amendment 8's validity reveals that the town knew Amendment 8 stood on shaky ground. This expression of doubt certainly undermines the town's affidavits, which purport a universal understanding among town and union officials that Amendment 8 was in effect.[9]

Finally, the town advances that this Court has looked favorably upon historical reliance on a pension system and a pension plan's incorporation by reference into CBAs under similar circumstances. To be sure, in *O'Connell* we were persuaded by the fact that all parties had "previously accepted th[e] pension fund as completely valid" and that the "pension plan was referenced and incorporated into a series of formal CBAs." *O'Connell*, 710 A.2d at 680. However, *O'Connell* contained a dispositive element that this case lacks: authoritative action by the town

---

[9] Likewise, the town references several summary plan descriptions (SPDs) of the plan that John Hancock authored to explain the plan to pension members. The town argues that the SPDs offer evidence that Amendment 8 was "considered as being in effect[,]" particularly because the summaries were available in the town's and union's files. The SPDs, however, were written by John Hancock, not the town council, and are not a part of the official plan. By the same token, the town council's authorization of a request for proposal for actuarial services, that was based on a report allegedly "drafted in part based on Amendment No. 8[,]" is equally immaterial. In the meeting minutes, which the town cites, there is no mention of Amendment 8, specifically, or even a reference to its content or substance.

council. *Id.* at 679 ("[A]lthough it may have been preferable for the * * * town council to have established its * * * pension plan using the formal procedures * * * it is clear that the town council intended to regulate the affairs of the municipality[.]") (internal quotation marks omitted). Here, there was never a vote, a discussion, or even a mention of Amendment 8, specifically, at a single town council meeting. Without meaningful evidence to this effect, we cannot hold that Amendment 8 was properly enacted under the town charter.

Having reviewed the matter *de novo*, we hold that Amendment 8 was never in effect and, therefore, was not incorporated into the plan. As such, no administrative remedy existed for Beaudry's claim at the time of his retirement in 2004.[10]

## IV

## Conclusion

For the reasons set forth herein, we vacate the amended judgment of the Superior Court and remand the matter to the Superior Court with instructions to conduct further proceedings consistent with this opinion.

Justice Long did not participate.

---

[10] Our decision on this issue obviates the need for discussion of Beaudry's argument regarding the doctrine of forfeiture.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



### OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Erin Beaudry, in her capacity as Personal Representative of the Estate of Armand Beaudry v. Randy Rossi, in his capacity as Finance Director/Treasurer for the Town of Smithfield. |
| **Case Number** | No. 2021-279-Appeal.<br>(PC 09-843) |
| **Date Opinion Filed** | June 9, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa Darigan |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Robert A. D'Alfonso, III, Esq. |
| | For Defendant:<br><br>Vincent F. Ragosta, Jr., Esq. |