John ELLIOTT

v.

TOWN OF WARREN et al.

No. 2001–479–Appeal.

Supreme Court of Rhode Island.

March 7, 2003.

---

1. The defendant testified that he weighed 155 pounds, while Stanton had estimated the defendant's weight at 190 pounds.

cer or firefighter attempts to obtain from the taxpayers additional salary and benefits to which the officer is not entitled by arguing that the state's Injured on Duty (IOD) statute, G.L.1956 § 45–19–1, supplants the pension system under which the municipal employee retired. *See Webster v. Perrotta,* 774 A.2d 68 (R.I.2001); *O'Connell v. Bruce,* 710 A.2d 674 (R.I.1998); *Palazzo v. DeLuca,* 694 A.2d 747 (R.I. 1997); *Lanni v. Ferrante,* 688 A.2d 865 (R.I.1997) (mem.); *Chester v. aRusso,* 667 A.2d 519 (R.I.1995); *Trembley v. City of Central Falls,* 480 A.2d 1359 (R.I.1984); *Central Falls Firefighters, Local No. 1485 v. City of Central Falls,* 465 A.2d 770 (R.I.1983); *St. Germain v. City of Pawtucket,* 119 R.I. 638, 382 A.2d 180 (1978).

Stephen G. Linder, Providence, for Plaintiff.

Anthony DeSisto, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court for oral argument on December 10, 2002, pursuant to an order directing all parties to appear and show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and considering the memoranda of the parties, we conclude that cause has not been shown. Accordingly, we shall decide the appeal at this time.

This dispute is but another chapter in the prolonged succession of cases in which a disabled and retired municipal police offi-

The plaintiff in this case, John Elliott (plaintiff or Elliott), a former patrolman with the Warren Police Department, is before the Court on appeal from a grant of summary judgment in favor of the defendant, town of Warren (Warren or town). Elliott sought relief in the Superior Court from the denial of supplemental pension benefits and medical expenses after an accidental on-the-job injury rendered him unable to perform his duties as a police officer and ultimately led to his disability retirement. The plaintiff argued that the town's purported membership in the Municipal Employees Retirement System (MERS), pursuant to the provisions of G.L. 1956 chapter 21 of title 45, was procedurally defective and void. He thus claimed entitlement to pension benefit payments and reimbursement for medical expenses pursuant to § 45–19–1. Elliott argued that he was entitled to reimbursement for the difference between his MERS pension and the base salary of a town patrolman as well as payment for nonreimbursed medical expenses arising as a result of his on-the-job injury.

Elliott was hired as a permanent police officer on October 13, 1976, and worked on patrol in the town until March 6, 1979, when he was involved in a head-on automobile collision on Child Street while on duty. Elliott suffered permanent disability as a result of the accident and was never able to successfully return to the town's police force. He underwent two surgeries to repair damage to his left femur and knee, but continues to have limited mobility in his left leg. A more recent diagnosis reveals that Elliott now suffers from post-traumatic degenerative arthritis of the left knee and may be a candidate for reparative or replacement surgery.

The plaintiff was terminated from his employment with the town on February 14, 1983, because of his impaired abilities and was placed on a disability pension pursuant to the provisions of MERS. The plaintiff received a disability pension from MERS from February 9, 1983, until July 1, 1992, at which time he voluntarily suspended his benefits to undertake employment as a police officer in Florida. His MERS pension later was reinstated on January 1, 1999, upon his return to Rhode Island and a renewed determination of his inability to work.

Before this Court, Elliott reaffirms his contentions made in the Superior Court that in denying him relief under § 45–19–1 and finding that the town has maintained a viable disability pension system, the trial justice misapplied the law. He reasserts that the town's entry into MERS was procedurally defective and void because it was not adopted by an "ordinance or a resolution" as required in § 45–21–4,[1] and therefore, his entitlement to benefits is controlled by § 45–19–1,[2] commonly referred to as the IOD Act. *See O'Connell*, 710 A.2d at 676; *Kaya v. Partington*, 681 A.2d 256, 259–60 (R.I.1996). Thus, Elliott maintains that Warren, rather than MERS, is obligated to pay his pension benefits. Alternatively, he argues that if MERS is the proper source for his disability pension, the town continues to be responsible for his medical expenses pursuant to § 45–19–1 because MERS does not provide for reimbursement and that a bifurcation of these benefits was contemplated by the Legislature.

The trial justice found that the language of § 45–19–1 provides no relief to plaintiff nor an entitlement to a bifurcation of pension and medical benefits when, as is the case with Warren, a disability pension system is in place. We uphold the findings of the trial justice and affirm the Superior Court's grant of summary judgment.

1. General Laws 1956 § 45–21–4 provides in pertinent part:

"(a) Any municipality may accept this chapter by an ordinance or resolution of its governing body stating the group or groups of employees to be included as provided in § 45–21–7. When the ordinance or resolution has been approved, a certified copy of it shall be forwarded to the retirement board by the city clerk or the moderator of the financial town meeting."

2. The relevant portion of G.L.1956 § 45–19–1 provides:

"Salary payment during line of duty illness or injury.—(a) Whenever any police officer * * * of any city, town * * * is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties, the respective city, town * * * by which the police officer * * * is employed, shall, during the period of the incapacity, pay the police officer * * * the salary or wage and benefits to which the police officer * * * would be entitled had he or she not been incapacitated, and shall pay the medical * * * [and] all similar expenses incurred by a member who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his or her disability retirement."

■ "This Court reviews *de novo* a trial justice's grant of summary judgment, applying the same criteria as those employed by the trial justice." *Regan v. Nissan North America, Inc.*, 810 A.2d 255, 257 (R.I.2002) (citing *Heflin v. Koszela*, 774 A.2d 25, 29 (R.I.2001)). We affirm the judgment only when, "after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Woodland Manor III Associates v. Keeney*, 713 A.2d 806, 810 (R.I.1998) (quoting *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I.1996)).

■ After a careful review of the legislative history and intent of MERS and the IOD statute, § 45–19–1, we agree with the trial justice that the operative and controlling statute in this case is chapter 21 of title 45, the Municipal Employees Retirement System. Section 45–21–1 explicitly sets forth the purpose of the act as intended to provide "an actuarially financed retirement system for municipal employees," in which adequate benefits are available "for the employees of any municipality who become superannuated or otherwise incapacitated while in service * * *." The benefits provided by MERS are the sole source of pension and medical benefits designated for former municipal employees such as Elliott, who have retired upon disability.

This Court has been confronted with this issue previously in *Lanni*, 688 A.2d at 866 and *St. Germain*, 119 R.I. at 641, 382 A.2d at 181, and have held that § 45–19–1, the IOD statute, was enacted to provide salary and medical benefits to disabled police officers whose status may be injured on duty but are nonetheless employees of the municipality, or who retire from a community that does not have in place a separate disability pension system. Be-

cause we are satisfied that, as will be addressed *infra*, a disability pension system was in effect in Warren, § 45–19–1 may not serve as a default source of benefits for Elliott. Upon accepting the status of a disabled retiree, the benefits provided by § 45–19–1 were forfeited; Elliott's entitlement to benefits and medical reimbursement is governed by the provisions of MERS. Consequently, the accidental disability allowance of "sixty-six and two-thirds percent (66–2/3%) of the rate of the member's compensation at the date of the member's retirement," pursuant to § 45–21–22, continues to be the proper pension amount for Elliott. Also noted in *Lanni*, 688 A.2d at 866, a bifurcation between IOD salary and medical benefits pursuant to § 45–19–1 and pension benefits under § 45–21–1, with reimbursement for the difference between a full salary and the two-thirds salary provided by MERS, was not contemplated by either statute and is not available to Elliott. As a retiree of the town, albeit as a result of an on-duty injury, Elliott is no longer an active duty police officer. *See Webster*, 774 A.2d at 80 (holding in clear and unequivocal language that the IOD statute is not a retirement act and provides for entitlement to benefits while the officer remains a member of the department). Upon acceptance of disability pension benefits from MERS for more than ten years, plaintiff elected his recovery and may not now seek additional benefits pursuant to § 45–19–1.

■ We now address Elliott's second contention that the trial justice erred in holding that the town was properly enrolled in MERS at the time of his retirement because the town council adopted the police contract by an affirmative vote, despite its failure to enact an ordinance or resolution as mandated by § 45–21–4. We deem this argument to be without merit. The record discloses that the town council

accepted the MERS retirement plan in February 1970, the funding necessary to implement the plan was approved by the voters at the financial town meeting in May 1970, and the town clerk communicated this fact to MERS officials shortly thereafter. The MERS pension plan has been incorporated into every police contract since the town originally accepted entry into the system.

The plaintiff's contention that the town's entry into MERS was procedurally defective is without merit. Although the plain language of § 45–21–4(a) provides that, "[a]ny municipality may accept this chapter by an ordinance or resolution of its governing body * * *," the fact that the Town Council opted to accept by an affirmative vote the provisions of the police contract, with subsequent funding approval by the voters at the financial town meeting, is of no moment to the validity of the town's participation in MERS. Based upon its historical reliance on MERS and the present status of Warren's pension system, the procedure utilized by the town was an effective entry into the municipal retirement system. The town communicated its acceptance to MERS, its budget was adjusted accordingly, and all employees who were enrolled and subsequently began receiving benefits, including Elliott, were on notice of the town's participation in MERS. We reject the notion that this plaintiff, who has been eligible for disability pension benefits since 1983, may now challenge the validity of the pension system. The plaintiff's reliance on notions of equity and fairness to bolster the argument that the enactment of the pension fund was invalid is equally without merit.

This Court previously has been confronted with the question of technical compliance with the establishment of a municipal pension plan in *O'Connell.* In that case, the Town of West Warwick had created its pension fund through a council resolution rather than by ordinance, as provided by statute. Analogous to the present controversy, West Warwick was called upon to defend the pension system by a group of disabled former police officers and firefighters who claimed entitlement to full salary and benefits pursuant to § 45–19–1 by default. This Court upheld the validity of the pension plan, noting that the formal name given to the procedure was immaterial when the substance and effect of the official act of the city was equivalent to an ordinance. *O'Connell,* 710 A.2d at 679. It was clear to this Court that "the town council 'intended to regulate' the affairs of the municipality * * * and that the resolution it passed to that end was 'in substance and effect an ordinance' sufficient to satisfy the hortatory guidelines and legislative intent reflected in the General Assembly's 1956 enabling statute." *Id.* at 679–80. The fact that all parties to the West Warwick litigation had previously accepted the pension fund as valid and had changed their respective positions in reliance thereon was accorded great weight. *Id.* at 680. We issue the same holding today. The procedure utilized by Warren in voting to approve a police contract in 1970, and presenting the question to the voters at a financial town meeting, did not run afoul of the enabling legislation and was in substance and effect a formal, public entry into the pension system. As we noted in *O'Connell,* 710 A.2d at 680, "our decision affords to all parties exactly the rights and obligations they expected, bargained for, and accepted without question * * *" as of the 1970 police contract and every contract thereafter.

Although we do not affirm or approve a relaxed standard of municipal compliance with legislative mandates nor condone a municipality's license to adopt unconventional procedures, we are not persuaded

that Warren engaged in such a radical departure from accepted municipal practice. We note the presumption of regularity that attaches to acts by municipal officials and have consistently held "that sworn officers of the law are entitled to the presumption that their official acts have been properly performed, until the contrary is proved." *Signore v. Zoning Board of Review of Barrington*, 98 R.I. 26, 34, 199 A.2d 601, 605 (1964); *see Andruzewski v. Smith*, 105 R.I. 463, 466–67, 252 A.2d 914, 916 (1969). In this case, the evidence clearly demonstrates that Warren appropriately entered the MERS pension system more than thirty years ago, in good faith and in accordance with sound management practices. Hence, the pension plan was valid and effective at all times pertinent to this litigation and the plaintiff's appeal must be denied.

For the reasons set forth herein, the plaintiff's appeal is denied and dismissed and the judgment is affirmed. The papers in this case are remanded to the Superior Court.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.