# United States Court of Appeals
## For the First Circuit

No. 10-2134

RAYMOND W. CAHOON, JR., ET AL.,

Plaintiffs, Appellants,

v.

OSCAR SHELTON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS
DIRECTOR OF PERSONNEL FOR THE CITY OF WARWICK, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Howard, Selya and Thompson, Circuit Judges.

William M. Kolb, with whom Law Offices of William M. Kolb was
on brief, for appellants.
Marc DeSisto, with whom DeSisto Law was on brief, for
appellees.

July 22, 2011

**SELYA**, **Circuit Judge**. We are entering an era in which retirement benefits paid to public employees are subject to heightened scrutiny. In this case, a municipality became convinced that former firefighters and police officers who had retired on disability pensions were collecting a particular benefit (full reimbursement of certain medical expenses) without legal warrant. The municipality acted on this conviction and stopped paying the tab. A group of affected retirees sued to enforce continued payment, alleging that the municipality's about-face violated state statutes, constituted an ultra vires act, contradicted principles of equity, and offended the Due Process Clause of the United States Constitution.

The district court entered summary judgment against all but three of the plaintiffs. The court then held a bench trial and resolved the remaining claims. The plaintiffs appeal the summary judgment rulings. We affirm.

## I. BACKGROUND

We briefly rehearse the relevant factual and procedural background, supplementing this bare-bones account in our subsequent discussion of particular issues.

The plaintiffs comprise thirty-three retired firefighters and police officers previously employed by Warwick, Rhode Island

(the City).[1]  At various points over the past three decades, each of them sustained a debilitating injury in the line of duty, resulting in a grant of disability leave by the City's Board of Public Safety (the Board).  When it became apparent that the plaintiffs' injuries precluded a return to active duty, the Board exercised its discretion to place them in retirement.  See Warwick, R.I., Code of Ordinances §§ 20-112(a)(1), 20-202(a)(1), 52-38(a), 52-76(a).  Each plaintiff received a disability pension that included defined medical benefits.

The present dispute centers on the extent of this benefit.  In the first instance, the City funds the payment of retirees' medical expenses[2] through health insurance, which covers part, but not all, of those costs.  For many years, the City also reimbursed excess medical expenses (i.e., expenses not covered by insurance).  This meant that one hundred percent of each retiree's medical expenses was reimbursed.

In 2003, the City took a fresh look at its past practice and concluded that, in accordance with a recent decision of the Rhode Island Supreme Court, it was not obliged to reimburse all of a disabled retiree's medical expenses.  Consequently, the City's

---

[1] The underlying action was originally commenced by thirty-nine plaintiffs, but six have fallen by the wayside.

[2] For purposes of this opinion, we limit the term "medical expenses" to those expenses incurred to cure or relieve the effects of injuries arising out of a firefighter's or police officer's employment.

personnel director, Oscar Shelton, informed the plaintiffs, by letter dated December 11, 2003, that as of January 1, 2004, the City would no longer reimburse medical expenses not covered by insurance. Because the letter directed disabled retirees instead to the health insurance provided as part of their pensions, it had the additional effect of requiring that, upon reaching the age of sixty-five, disabled retirees would have to apply for Medicare.

Dismayed by this about-face, the plaintiffs asked for a hearing before the Board. The Board responded that

> [a]lthough [the] request can be placed on the agenda, the Board's position is, pursuant to the [Rhode Island] Supreme Court decision, that any retiree who has written confirmation that the City and/or Board of Public Safety will pay 100% of [on-the-job injury] related medical bills after retirement will have those bills paid in full. Otherwise, the Board's position is that the City's health insurance, as part of the retirement plan, meets the City's obligation.

After unsuccessfully presenting their claims to the City Council, see R.I. Gen. Laws § 45-15-5, the plaintiffs brought suit in state court against the Board, the City, and a myriad of municipal officials (including Shelton). Their complaint challenged termination of the practice of fully reimbursing medical expenses as violative of state statutory law, unauthorized, barred by principles of equitable estoppel, and offensive to due process. The defendants removed the action to the federal district court. See 28 U.S.C. §§ 1331, 1441.

-4-

In due season, the defendants sought summary judgment. See Fed. R. Civ. P. 56. The district court initially granted the motion on all claims. Cahoon v. Shelton (Cahoon I), No. 07-cv-008, 2008 WL 64518, at *12 (D.R.I. Jan. 4, 2008). On the plaintiffs' motion for reconsideration, the court later vacated the judgment with respect to the equitable estoppel claims. See Cahoon v. Shelton (Cahoon II), No. 07-cv-008, 2008 WL 6514326, at *1 (D.R.I. Mar. 10, 2008). After further discovery limited to the equitable estoppel issue, the court granted summary judgment in favor of the defendants on the estoppel claims of all but three of the plaintiffs. See Cahoon v. Shelton (Cahoon III), No. 07-cv-008, 2009 WL 1758738, at *7 (D.R.I. June 18, 2009).

The three exempted plaintiffs (James Gordon, Michael Kraczkowski, and Thomas Thompson) tried their estoppel claims to the court, which found that the Board had explicitly promised to reimburse all of Gordon's and Kraczkowski's medical expenses but had made no comparable promise to Thompson. See Cahoon v. Shelton (Cahoon IV), No. 07-cv-008, 2010 WL 3385040, at *3-4 (D.R.I. Aug. 26, 2010). The court entered judgment accordingly. Id. at *5. The plaintiffs' timely appeal of the summary judgment rulings followed. The defendants have not appealed the judgments in favor of Gordon and Kraczkowski on the bench-tried estoppel claims. For his part, Thompson has not appealed from the adverse findings in

the bench trial (although he, like the plaintiffs generally, continues to press a global claim of estoppel).

## II.  ANALYSIS

In this venue, the plaintiffs resurrect the same asseverational array that they presented in the court below. After delineating the legal standards that govern our inquiry, we address each of the plaintiffs' four global asseverations. We then turn to the individualized and conceptually distinct claims mounted by Gordon and Kraczkowski. Because the latter two claims stand on a different conceptual footing, we hereafter use the term "the plaintiffs" to designate all the plaintiffs other than Gordon and Kraczkowski.

### A.  Legal Standards.

Our review of a district court's entry of summary judgment is de novo. Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 12 (1st Cir. 2007). We will affirm the decision only if the record reveals no genuine issue as to any material fact and discloses that the moving party is entitled to judgment as a matter of law. Vineberg v. Bissonnette, 548 F.3d 50, 55 (1st Cir. 2008). In this endeavor, we are not married to the trial court's reasoning but, rather, may affirm on any independently sufficient ground made manifest by the record. Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).

When interpreting state law, a federal court employs the method and approach announced by the state's highest court. Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc., 492 F.3d 484, 489 (4th Cir. 2007); Nat'l Pharmacies, Inc. v. Feliciano-de-Melecio, 221 F.3d 235, 241-42 (1st Cir. 2000). The Rhode Island Supreme Court has made it pellucid that in interpreting state statutes, a court's "ultimate goal is to give effect to the purpose of the act as intended by the Legislature." Webster v. Perrotta, 774 A.2d 68, 75 (R.I. 2001). "The best evidence of such intent can be found in the plain language used in the statute." Steinhof v. Murphy, 991 A.2d 1028, 1036 (R.I. 2010) (quoting State v. Germane, 971 A.2d 555, 574 (R.I. 2009)).

Thus, when faced with statutory language that is clear and unambiguous, an inquiring court ordinarily must construe the statute precisely as it is written, giving its constituent words their plain meanings.[3] Liberty Mut. Ins. Co. v. Kaya, 947 A.2d 869, 872 (R.I. 2008). In performing that task, the court must "consider the entire statute as a whole." Ryan v. City of Providence, 11 A.3d 68, 71 (R.I. 2011). Only if the legislature has sounded an uncertain trumpet should a court resort to canons of

---

[3] We say "ordinarily" because, plain language notwithstanding, a statute should never be construed in a way that produces an absurd result. Ryan v. City of Providence, 11 A.3d 68, 71 (R.I. 2011).

statutory construction.  <u>Harvard Pilgrim Health Care of New Engl.,</u>
<u>Inc.</u> v. <u>Rossi</u>, 847 A.2d 286, 290 (R.I. 2004) (per curiam).

## B.  **The IOD Statute**.

The plaintiffs' principal argument hinges on state
statutes, municipal ordinances, and the interplay among them.  The
touchstone of this argument is the injured-on-duty (IOD) statute,
which reads in relevant part:

> Whenever . . . any police officer [or] fire
> fighter . . . of any city . . . is wholly or
> partially incapacitated by reason of injuries
> received . . . in the performance of his or
> her duties . . ., the respective city . . . by
> which the police officer [or] fire fighter
> . . . is employed, shall, during the period of
> the incapacity, pay the police officer [or]
> fire fighter . . . the salary or wage and
> benefits to which the police officer [or] fire
> fighter . . . would be entitled had he or she
> not been incapacitated, and shall pay the
> medical [expenses] for the necessary period
> . . . .  In addition, the cities . . . shall
> pay all similar expenses incurred by a member
> who has been placed on a disability pension
> and suffers a recurrence of the injury or
> illness that dictated his or her disability
> retirement.

R.I. Gen. Laws § 45-19-1(a).

The IOD statute comprises two sentences.  The district
court concluded that neither sentence was sufficient to carry the
burden of the plaintiffs' statutory argument.  The court reasoned
that the first sentence (Sentence 1) did not apply because, as
retirees, the plaintiffs were no longer employed by the City.
<u>Cahoon I</u>, 2008 WL 64518, at *4-5.  It concluded that application of

-8-

the second sentence (Sentence 2) was sidetracked by the combined effect of R.I. Gen. Laws § 43-3-26 and Warwick's municipal ordinances. Id. at *5-8. Consequently, the court held that the plaintiffs were not, as a statutory matter, entitled to full reimbursement of medical expenses. Id. at *8.

The plaintiffs argue that the district court erred; that Sentence 1 entitles them, even after their retirement, to full reimbursement of medical expenses; and that Sentence 2 independently produces the same result.

We start with Sentence 1. The plaintiffs maintain that this sentence confers benefits not only during the course of employment but also during retirement. In their view, the language of Sentence 1 is ambiguous, and the district court's interpretation fails to effectuate the intent of the state legislature (the Rhode Island General Assembly). We find this argument unpersuasive.

The language of section 45-19-1(a) is clear as a bell. The section creates two tiers of benefits: the first, codified in Sentence 1, applies to persons who are still employed but temporarily disabled; the second, codified in Sentence 2, applies to persons who are retired due to a disability. The instruction in Sentence 1 to pay "during the period of the incapacity" the "salary or wage" to which the injured worker "would be entitled had he or she not been incapacitated" unequivocally denotes a person presently employed. After all, a retiree, by definition, no longer

draws a salary or wages.  Rather, as Sentence 2 makes manifest, a retiree is "placed on a . . . pension."  Equally telling is the legislature's use of the present tense ("is employed") in Sentence 1.

This reading is reinforced by the statutory description of the benefit period as a "period of the incapacity."  That description plainly envisions that benefits under Sentence 1 are meant to apply for a limited time.  By contrast, Sentence 2 speaks of "retirement" — an unlimited time.  The contrary reading urged by the plaintiffs would obliterate this line of demarcation.

If more were needed — and we do not think that it is — fully reimbursing the medical expenses of disabled retirees under Sentence 1 would make Sentence 2 entirely superfluous.  Courts should avoid construing a statute in a way that will divest any of its component parts of meaning.  See, e.g., State v. Clark, 974 A.2d 558, 572 (R.I. 2009); Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987).  There is every reason to honor that precept here.

Our reading of section 45-19-1(a) is wholly consistent with the case law.  The state's highest court has determined that the language of the IOD statute is clear and unambiguous.  See Brissette v. Potter, 560 A.2d 324, 325 (R.I. 1989); Aiudi v. Pepin, 417 A.2d 320, 321 (R.I. 1980).  In addition, our parsing of the statute's two sentences conforms with that court's precedents.  See, e.g., Webster, 774 A.2d at 80 (concluding that the benefits

contemplated by Sentence 1 apply to a firefighter or police officer only "while he or she remains a member of the department" (emphasis in original)); Brissette, 560 A.2d at 326 (stating that the "first portion of the statute . . . relates specifically to salary" while the second clause "relates to medical expenses for a member who has been placed on a disability pension").

The recent case of Hagenberg v. Avedisian, 879 A.2d 436 (R.I. 2005) mirrors the circumstances with which we are confronted. There, a retired Warwick police officer sought full reimbursement of medical expenses under the IOD statute. Id. at 438-39. The court held that Sentence 1 did not compel such reimbursement for an officer who had retired on a disability pension. Id. at 441-42 (explaining that "[t]he IOD statute never was intended to supplement a retired officer's retirement benefits"). As the court had explained in an earlier case, "[u]pon acceptance of disability pension benefits," a plaintiff "may not . . . seek additional benefits pursuant to § 45-19-1." Elliott v. Town of Warren, 818 A.2d 652, 655 (R.I. 2003) (per curiam). Here, the plaintiffs availed themselves of the City's retirement benefits regime and they cannot now resort to the prophylaxis of section 45-19-1.

In an effort to lessen the impact of these precedents, the plaintiffs insist that the General Assembly, by enacting section 45-19-1, intended to give disabled firefighters and police officers greater benefits than those available under traditional

-11-

workers' compensation laws. This insistence puts the matter in a false light. It was only through Sentence 1, which ensures the payment of full salary and medical benefits during the period of temporary incapacity, that the General Assembly intended to exceed the generosity of the workers' compensation laws. See Labbadia v. State, 513 A.2d 18, 21 (R.I. 1986) (describing the advantages of the IOD statute vis-à-vis the workers' compensation laws). Nothing in the text of section 45-19-1 suggests that the legislature's purpose was to give injured firefighters and police officers better retirement benefits. See Hagenberg, 879 A.2d at 441.

This brings us to Sentence 2, which states that the City "shall pay all similar expenses incurred by a member who has been placed on a disability pension." The plaintiffs' position is that this language cinches their entitlement to full reimbursement of medical expenses post-retirement. The language of Sentence 2, if read in a vacuum, gives this position a certain superficial allure. But a court cannot — and must not — read a statute in a vacuum, and Sentence 2 runs headlong into R.I. Gen. Laws § 43-3-26, which directs that, in cases of irreconcilable conflict between two legislative provisions, one general and the other specific, the latter "shall prevail and shall be construed as an exception to the general provision."

The specific provision applicable here is R.I. Gen. Laws § 45-19-19, which authorizes municipalities to "provide, by

ordinance or through collective bargaining, for the retirement of the personnel of their police and fire departments who have been on leave of absence from their employment due to . . . injuries sustained in the performance of their duties." Because Warwick provides retirement medical benefits to its disabled firefighters and police officers through a combination of city ordinances and collective bargaining agreements (CBAs),[4] the court below held that this specific arrangement took precedence over the more general provision contained in Sentence 2 and, therefore, that the plaintiffs were not entitled to full medical benefits under section 45-19-1(a). Cahoon I, 2008 WL 64518, at *8. This holding is manifestly correct.

We need not tarry. Sentence 2 is a general provision. It conflicts with the combination of R.I. Gen. Laws § 45-19-19 and the City's actions in pursuance thereof. For present purposes, this conflict renders Sentence 2 inapposite. See St. Germain v. City of Pawtucket, 382 A.2d 180, 181 (R.I. 1978) (per curiam) (concluding that city's retirement benefits law for injured firefighters was specific compared to section 45-19-1, where former

_____

[4] Warwick firefighters and police officers are afforded pensions and health insurance coverage, regardless of whether or not retirement is due to a disability. See Warwick, R.I., Code of Ordinances §§ 20-101, 20-161, 52-36, 52-76 (pensions); id. §§ 20-60, 52-6 (health insurance). The CBAs between the City and the public safety unions echo these arrangements.

was "applicable only to the city," while latter was "a general statute which applies to all cities and towns").

The plaintiffs proclaim that there is no conflict between section 45-19-1 and the City's retirement scheme. But the conflict is obvious. Warwick's ordinances provide disabled retirees with health insurance, see Warwick, R.I., Code of Ordinances §§ 20-60(a), 52-6(a), and this insurance covers some (but not all) medical expenses, leaving the retirees responsible for the balance. Furthermore, the insurance coverage attaches only until Medicare can be expected to bear the load. Id. §§ 20-60(c), 52-6(b). This scheme directly and ineluctably conflicts with the second sentence of section 45-19-1(a), which requires the full payment of any medical expenses — and does so without any Medicare hand-off. See Morry v. City of Warwick, 742 A.2d 1205, 1207 (R.I. 2000) (per curiam).

The significance of this conflict is made clear by the decision in St. Germain, which explains that the General Assembly designed section 45-19-1 to protect only those firefighters and police officers who are employed by "cities . . . that do not have their own pension plans." 382 A.2d at 181.

The statute "in no way repeals or supersedes" the various special acts that authorize municipalities to establish their own pension and retirement benefit plans. Id.; see Trembley v. City of Central Falls, 480 A.2d 1359, 1362 (R.I. 1984). Thus, where a

-14-

pension system that includes medical benefits is in effect, "§ 45-19-1 may not serve as a default source of benefits." Elliott, 818 A.2d at 655; see Hagenberg, 879 A.2d at 442 ("An injured officer employed by a municipality that has its own retirement system is restricted to the benefits provided by the particular statutory scheme.").

The plaintiffs mount two additional counter-arguments. First, they contend that the grant of health insurance coverage to retired firefighters and police officers is effectuated not by section 45-19-19, but by section 45-2-11, which gives municipalities authority to provide healthcare coverage for all employees. This latter statute, they say, is another general statute, thus eliminating the perceived conflict. This contention is unavailing.

The ordinances that grant the City authority to provide health insurance coverage for its retired public safety personnel enumerate not only section 45-2-11, but also "every other power thereunto enabling." Warwick, R.I. Code of Ordinances § 20-60(a); see id. § 52-6(a). This language plainly encompasses section 45-19-19, which addresses the narrower subset of retired firefighters and police officers.

In all events, whether or not a conflict exists between sections 45-19-1 and 45-2-11, there is an undeniable conflict between both of those general provisions and the specific provision

of section 45-19-19.  So long as that is true, section 45-2-11 cannot come to the plaintiffs' rescue.

Alternatively, the plaintiffs labor to refute the conclusion that section 45-19-1 should not be read to permit, in effect, a bifurcation of benefits (some governed by state statutes and others governed by municipal ordinances).  See Cahoon I, 2008 WL 64518, at *6.  But the state supreme court's decision in Elliott stands squarely in their path.  See Elliott, 818 A.2d at 654 (rejecting any "entitlement to a bifurcation of pension and medical benefits when . . . a disability pension system is in place").

While the plaintiffs strive to distinguish Elliott on the ground that the claimant in that case was seeking both salary and medical expense reimbursements, id. at 653, there is no reason to believe that the General Assembly intended a claim for one kind of retirement benefits under section 45-19-1 to be treated differently from a claim for some other kind of retirement benefits.  Indeed, the case law suggests the opposite conclusion.  See Hagenberg, 879 A.2d at 441-42; see also Lanni v. Ferrante, 688 A.2d 865, 866 (R.I. 1997) (mem.) (concluding that "plaintiff, having voluntarily elected to recover his disability pension benefits from [the municipal pension] system . . . may not . . . seek benefits pursuant to § 45-19-1"); cf. United States v. O'Neil, 11 F.3d 292, 296 (1st Cir. 1993) (noting venerable principle that grant of a greater power includes grant of a lesser power).

-16-

The short of it is that Sentence 2 functions as a gap-filling mechanism, assuring injured retirees that municipalities will not leave them completely high and dry with regard to medical expenses.[5] If, however, a municipality provides medical coverage for retirees, there is no gap to fill and, thus, no room for section 45-19-1 to furnish default benefits. See Hagenberg, 879 A.2d at 442. That the benefit separately provided is less than one hundred percent of medical expenses does not alter this reality. See, e.g., Elliott, 818 A.2d at 655.

Here, the City has created a retirement system that covers its public safety retirees and affords them medical benefits. It is this system, not Sentence 2, that dictates the medical benefits available to the plaintiffs.

In a last-ditch effort to carry the day, the plaintiffs assert that the City's retirement plan incorporates the benefits due to retirees under section 45-19-1. This assertion lacks force.

To be sure, some municipalities maintain retirement systems which, either through legislative acts or CBAs, incorporate the provisions of the IOD statute and provide that retirement

---

[5] The plaintiffs suggest that Sentence 2, rather than functioning as a gap-filler, was a legislative response to the decision in Santanelli v. City of Providence, 250 A.2d 849 (R.I. 1969). However, the amendment of the IOD statute to include Sentence 2 occurred a full six years after Santanelli was decided. The alleged cause-and-effect relationship is pure conjecture and, in any event, Sentence 2's language is inhospitable to the suggestion.

-17-

benefits for disabled public safety officers should be distributed accordingly. See, e.g., Brissette, 560 A.2d at 325. Warwick, however, is not among that number. Nothing in the City's ordinances or CBAs indicates an intent to integrate the terms of section 45-19-1 into the City's retirement system. There would be no justification in straining to reach such a result by judicial fiat.

Hagenberg confirms this understanding. The court there explicitly stated that an officer who "retires with a disability pension . . . forfeits the benefits of § 45-19-1, unless the municipality has no disability pension system." 879 A.2d at 442. The court's statement that the component of the City's retirement system that paid medical benefits was "in accordance with the IOD statute," id. at 443, signifies only that the City maintained a disability retirement system that provided medical benefits sufficient to obviate any need to resort to default benefits under section 45-19-1. Thus, we conclude that the plaintiffs' claims for full reimbursement of medical expenses by operation of the IOD statute, whether seen in terms of Sentence 1 or Sentence 2, are without merit.

## C. **Ultra Vires**.

When the City came to the belated realization that its practice of fully reimbursing disabled retirees' medical expenses was gratuitous, its personnel director (Shelton) put a stop to it.

-18-

The plaintiffs contend that the decision as to whether to halt the practice was the Board's prerogative and that, therefore, Shelton's unilateral action was ultra vires.[6]

The plaintiffs' contention puts the cart before the horse. Warwick's ordinances explicitly provide that the Board "has the responsibility for approving all applications for retirement, death, termination, and disability benefits." Warwick, R.I., Code of Ordinances §§ 20-137, 20-262; see id. §§ 52-36, 52-39, 52-76, 52-77, 52-80. Hence, the Board is the only entity in the City that has the authority to authorize full reimbursement of medical expenses. This is crucial because the record is barren of any evidence that the Board ever authorized the full reimbursement practice on a global basis.

Without such an authorization from the Board, the payments made by the City to reimburse medical expenses were themselves ultra vires. It follows inexorably that no special authorization was needed to halt them. After all, when a party has no lawful right to receive payments from the public fisc, halting the stream of unauthorized payments requires no particular

---

[6] To the extent that the plaintiffs challenge the propriety of summary judgment because the record is silent as to whether the Board approved full reimbursement of medical expenses globally, that challenge is bootless. A party who bears the burden of proof on an issue cannot defeat summary judgment by relying on speculation about the facts. Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010). Such a party must offer "definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).

formality.  See Town of Johnston v. Pezza, 723 A.2d 278, 283 (R.I. 1999).[7]  Absent some equitable barrier to the cessation of unauthorized payments (a matter to which we shortly shall return), a municipality is allowed to correct an ultra vires practice regardless of which municipal officer brings it to a halt.  See id. at 284; Almeida v. Zoning Bd. of Review of Tiverton, 606 A.2d 1318, 1321 (R.I. 1992); see also Pub. Serv. Co. of N.H. v. Town of West Newbury, 835 F.2d 380, 383 (1st Cir. 1987) (discerning no authority for the proposition that a municipality cannot "nullif[y] an action invalid from the beginning").

### D.  **Equitable Estoppel**.

The plaintiffs next invoke the equitable exception to the halting of an ultra vires practice, positing that the City's prolonged reimbursement of medical expenses estops it from changing course at this late date.  The district court rejected this global theory, Cahoon III, 2009 WL 1758738, at *7, even though it found that specific estoppel-creating promises had been made to Gordon and Kraczkowski, Cahoon IV, 2010 WL 3385040, at *4-5.

To succeed on an equitable estoppel claim, a party must establish that the defendant made "an affirmative representation

---

[7] The plaintiffs insist that Pezza is off-point because the person terminating the unlawfully issued building permit had authority to rescind permits not in compliance with the town's zoning requirements.  But this is a distinction without a difference.  What matters is that the initial act was unauthorized and, therefore, a nullity.  See Town of Charlestown v. Beattie, 422 A.2d 1250, 1252 (R.I. 1980).

. . . directed to [him] for the purpose of inducing [him] to act or fail to act in reliance thereon," and that such representation "did induce [him] to act or fail to act to his injury." Prov. Teachers Union v. Prov. Sch. Bd., 689 A.2d 388, 391-92 (R.I. 1997) (quoting Lichtenstein v. Parness, 99 A.2d 3, 5 (R.I. 1953)); accord Saccucci Auto Grp., Inc. v. Am. Honda Motor Co., 617 F.3d 14, 27 (1st Cir. 2010) (applying Rhode Island law). With respect to a governmental entity, estoppel "must be predicated upon the acts or conduct of [the public entity's] officers, agents or official bodies acting within the scope of their authority." Potter v. Crawford, 797 A.2d 489, 492 (R.I. 2002) (per curiam) (internal quotation omitted). Measured against these benchmarks, the plaintiffs' estoppel claims are triply flawed.

The first flaw is the absence of any evidence that the Board made either a promise or an affirmative representation to disabled firefighters and police officers generally that the City would fully reimburse disabled retirees' medical expenses. For aught that appears from the record, the Board was not consulted. In the absence of such evidence, the district court appropriately granted summary judgment on the equitable estoppel claims. See Ret. Bd. of Emps.' Ret. Sys. v. DiPrete, 845 A.2d 270, 284 (R.I. 2004).

The second flaw is equally destructive to the fabric of the plaintiffs' argument. "[T]he doctrine of equitable estoppel

-21-

should not be applied against a governmental entity . . . when, as here, the alleged representations or conduct relied upon were ultra vires." Romano v. Ret. Bd. of Emps.' Ret. Sys., 767 A.2d 35, 38 (R.I. 2001). Because the City's full reimbursement of medical expenses was ultra vires, see supra Part II(C), the claims for equitable estoppel founder. See, e.g., Tech. Investors v. Town of Westerly, 689 A.2d 1060, 1062 (R.I. 1997).

Third, and finally, the Rhode Island Supreme Court has noted that "[t]he key element of an estoppel is intentionally induced prejudicial reliance." El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1234 (R.I. 2000) (quoting E. Greenwich Yacht Club v. Coastal Res. Mgmt. Council, 376 A.2d 682, 686 (R.I. 1977)). The plaintiffs have proffered nothing to show that the City intentionally induced reliance on a continuation of full reimbursement (indeed, they have not even identified a reason why the City might have wanted to induce such reliance). The lack of any such proof is, in itself, a sufficient basis for summary judgment on these claims. See Leiter v. Allstate Ins. Co., 725 A.2d 882, 883-84 (R.I. 1999) (per curiam).

### E. Due Process.

The plaintiffs' last remonstrance charges that Shelton's termination of the past practice without a hearing took their property without due process of law. This remonstrance need not occupy us for long.

-22-

It is apodictic that the Constitution "imposes constraints on governmental decisions which deprive individuals of . . . 'property' interests within the meaning of the Due Process Clause." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). A court tasked with determining whether a constitutionally protected property interest exists must look to "existing rules or understandings that stem from an independent source such as state law." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). A party's unilateral expectation, in itself, cannot create a constitutionally protected property interest. Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980); Young v. Wall, 642 F.3d 49, 53 (1st Cir. 2011).

The plaintiffs have not identified any source that would give rise to a constitutionally protected property interest in the continuation of full reimbursement. For example, there is no statutory requirement that the City reimburse retired firefighters and police officers for medical expenses beyond what is already provided through the retirement system. See supra Part II(B). Nor have the plaintiffs shown a property interest forged through the operation of equitable principles. See supra Part II(D). While we do not question the sincerity of the plaintiffs' desire to continue receiving full reimbursement, such a desire, unanchored in a state law or rule, is not enough to ground a procedural due process

-23-

claim.[8]   See, e.g., Young, 642 F.3d at 55; Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 8 (1st Cir. 2005).

## F. Gordon and Kraczkowski.

As we already have explained, Gordon and Kraczkowski prevailed at a bench trial on their estoppel claims because the Board had made specific commitments to them. Consequently, they continue to receive full reimbursement of medical expenses. Nevertheless, they contend that judgment should not have been entered against them on their ultra vires and procedural due process claims.

Gordon and Kraczkowski have not explained what other or further relief they might be entitled to receive on these theories. They simply assert, without elaboration and in conclusory fashion, an entitlement to relief. We long have held that claims asserted in a perfunctory manner, unaccompanied by developed argumentation, are deemed abandoned. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). So it is here.

Another infirmity is apparent. The district court granted summary judgment on the ultra vires and procedural due process claims, see Cahoon I, 2008 WL 64518, at *9-11, before

---

[8] The plaintiffs make a feeble attempt to argue that the termination of full reimbursement deprived them of substantive due process. This argument appears for the first time in their reply brief. It is, therefore, waived. See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990).

Gordon and Kraczkowski, in a later bench trial, established the existence of specific promises of full reimbursement, see Cahoon IV, 2010 WL 3385040, at *5. This changed factual finding presented an avenue by which Gordon and Kraczkowski could, and should, have sought the additional relief they desired. See In re Sun Pipe Line Co., 831 F.2d 22, 24 (1st Cir. 1987). But neither Gordon nor Kraczkowski ever asked the district court to modify its earlier judgment on the ultra vires and due process claims in light of Cahoon IV. See Fed. R. Civ. P. 59(e); In re Sun Pipe Line, 831 F.2d at 24 (explaining that a motion asking "the court to modify its earlier disposition of a case because of an allegedly erroneous legal result is brought under Fed. R. Civ. P. 59(e)").

"[I]t is black letter law that it is a party's first obligation to seek any relief that might fairly have been thought available in the district court before seeking it on appeal." Beaulieu v. IRS, 865 F.2d 1351, 1352 (1st Cir. 1989). Gordon and Kraczkowski flouted this obligation. Given the circumstances of this case, we see no reason to consider their request for additional (unspecified) relief as a matter of first impression. See, e.g., Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 22 n.9 (1st Cir. 1989).

## III. CONCLUSION

To sum up, government officials have a solemn duty to expend public funds in accordance with law. Although we understand

the plaintiffs' frustration — after all, the City buoyed their hopes when it mistakenly plunged ahead, over a period of years, to make full reimbursement of disabled public safety retirees' medical expenses — they have not, as a class, shown any basis in law or in equity sufficient to force the City to perpetuate this erroneous practice. Taxpayers, too, have rights.

We do, however, make an exception for Gordon and Kraczkowski. Each of them has succeeded in making out a claimant-specific case for estoppel. They have earned the right to the relief that the district court ordered.

We need go no further. The district court patiently explored the complexities of these tangled issues and reached a correct result.

**Affirmed**.