# United States Court of Appeals
## For the First Circuit

No. 10-2123

LUIS AIK AYALA-SEPÚLVEDA,

Plaintiff, Appellant,

v.

MUNICIPALITY OF SAN GERMÁN;
ISIDRO NEGRÓN-IRIZARRY, Mayor of San Germán,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Bámily López-Ortiz, with whom Estudio López Toro was on brief, for appellant.
Jorge Martínez-Luciano, with whom Law Offices of Pedro Ortiz Álvarez was on brief, for appellee Municipality of San Germán.
Susana I. Peñagarícano-Brown, Assistant Solicitor General, with whom Irene S. Soroeta-Kodesh, Solicitor General, Leticia Casalduc-Rabell, Acting Deputy Solicitor General, and Zaira Z. Girón-Anadón, Acting Deputy Solicitor General, were on brief, for appellee Isidro Negrón-Irizarry.

January 18, 2012

**TORRUELLA, Circuit Judge**. Plaintiff-Appellant Luis Aik Ayala-Sepúlveda ("Ayala") appeals the district court's award of summary judgment to his employer, the Municipality of San Germán, Puerto Rico ("San Germán" or "the City"), and to the mayor of San Germán, Isidro Negrón-Irizarry ("Negrón"), on his claim under 42 U.S.C. § 1983 for sex discrimination and retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment. We conclude that the district court's award of summary judgment was proper. We therefore affirm the decision of the district court.

## I. Background

### A. Ayala's Employment and Alleged Harassment

Ayala, a homosexual man, has held various positions with the City. At the start of the time period relevant to this case, Ayala was an employee of the Municipal Office of Emergency Management ("OMME")[1]. Ayala alleges that at various times during 2006 and 2007, while he was studying for his certification as a rescuer, his co-workers at OMME ridiculed him for being a homosexual; specifically, Ayala alleges that his co-workers told him that he could not perform physically demanding tasks because of his sexual orientation. Ayala did not identify those co-workers who allegedly teased him as defendants in his complaint.

---

[1] This acronym comes from the Spanish name "Oficina Municipal para el Manejo de Emergencias."

On September 10, 2007, Ayala commenced a four-month extended vacation from OMME. Ayala claims that during this vacation, he began a romantic relationship with a male co-worker at OMME, José J. Rodríguez-Vega ("Rodríguez"). This relationship allegedly ended when Rodríguez became involved with a female co-worker at OMME. Upon returning to work at OMME in January of 2008, Ayala told his supervisor, Nelson Cruz-Malavé ("Cruz"), that he was concerned that Rodríguez might physically attack him. Ayala requested that Cruz assign work in such a way that Ayala and Rodríguez would not have to work together.

Ayala alleges that when he returned to OMME, his work conditions changed substantially. He claims that he was assigned to "graveyard" shifts not on his regular schedule, that he went for days without being assigned work, and that he was moved from his regular office into a storage closet. Ayala complained about these changes to Negrón, who ordered Cruz to return Ayala to his regular working hours. In the meantime, the situation with Rodríguez escalated, culminating in an incident on February 15, 2008. According to Ayala, Rodríguez threatened him with physical harm, and Cruz had to call the Puerto Rico Police to the scene. Ayala also alleges that around this time, another OMME employee, Pablo Miranda-Santana ("Miranda"), falsely accused Ayala of making unwanted advances and threatened to file a sexual harassment claim against him.

On February 25, 2008, Ayala met with the City's Director of Human Resources, Juan Crespo ("Crespo"), and with Negrón's Special Aide, José Iván Torres ("Torres"), to discuss the situation at OMME. At this meeting, Crespo and Torres recommended that Ayala transfer to an administrative position with the Municipal Cemetery, since the City needed to replace an absent worker there. Ayala refused the transfer. The next day, Ayala met directly with Negrón, who again suggested that Ayala transfer to the Cemetery. The following day, Ayala met with Negrón again; however, Negrón also invited Rodríguez and Miranda to the meeting, allegedly without warning Ayala. Ayala claims that he was so distressed by this that he had to seek medical treatment for anxiety. Some time later, Ayala's mother and sister met with Negrón to complain about Negrón's treatment of Ayala. Ayala alleges that at this meeting, Negrón attempted to "out" Ayala by telling his mother that his "sexual definition" was the source of his problems; however, Ayala's family already knew about his sexual orientation.

It is not clear whether Ayala spent any time working at the Cemetery. Nevertheless, on May 29, 2008, Ayala filed a complaint with the Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público ("CASARH"), the Puerto Rico administrative agency in charge of reviewing personnel actions. The next day, Negrón sent a letter to Ayala informing him that he was being transferred effective immediately to the City's

Finance Department. The letter stated that the transfer was part of a reorganization program that had been announced one year earlier under which employees could be transferred between various departments based on personnel needs. The transfer to the Finance Department did not affect Ayala's salary or rank, although Ayala claims that his duties changed substantially.

One of Ayala's duties in the Finance Department was to process the payment of invoices. Ayala claims that one of the invoices he was required to process was for payment to the private attorney whom the City hired to represent it in Ayala's CASARH proceeding. Ayala claims that having to process this invoice made him so nervous and depressed that he required hospitalization.

## B. Procedural History

On May 26, 2009, Ayala filed his complaint in this case against Negrón and the City in the U.S. District Court for the District of Puerto Rico. Ayala claimed that the harassment by his co-workers at OMME constituted sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Ayala contended that Negrón and the City were liable for this discrimination because they did not prevent the harassment. Ayala also claimed that Negrón and the City were liable for retaliation under Title VII because, following the filing of his CASARH complaint, the City transferred him to the Finance Department. Ayala additionally brought a claim under 42

-5-

U.S.C. § 1983, claiming that Negrón and the City violated his due process and equal protection rights under the Fourteenth Amendment by failing to stop the harassment at OMME and by transferring him to the Finance Department.[2]

On August 11, 2009, the defendants moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) on Ayala's Title VII and due process claims. On September 30, 2009, the district court granted the motion. See Ayala-Sepúlveda v. Municipality of San Germán, et al., 661 F. Supp. 2d 130 (D.P.R. 2009) ("Ayala I"). The court dismissed Ayala's Title VII claims on the ground that "Title VII does not proscribe harassment simply because of sexual orientation." Id. at 136 (quoting Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259 (1st Cir. 1999)) (internal quotation marks omitted). The court also found that Ayala had failed to state a claim for gender stereotyping. Id. at 136-37. Additionally, the court dismissed Ayala's procedural due process claim under 42 U.S.C. § 1983, noting that under Puerto Rico law, public employees "have a property interest in their continued employment, not in the functions they perform." Id. at 139 (quoting Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005)) (internal quotation marks omitted). Since Ayala only alleged that he was transferred from one equivalent job to another,

---

[2]  Ayala included various claims under Puerto Rico law, but these claims are not before us on appeal.

the court ruled that he had not suffered a deprivation of a property interest that could sustain a due process claim.  Id.

On April 30, 2010, the defendants moved for summary judgment on Ayala's one remaining claim, his equal protection claim under 42 U.S.C. § 1983.  The district court granted the defendants' motion for summary judgment and dismissed the equal protection claim on August 2, 2010.  See Ayala-Sepúlveda v. Municipality of San Germán, et al., 727 F. Supp. 2d 67 (D.P.R. 2010) ("Ayala II").  The court held that because of the one-year statute of limitations applicable to § 1983 claims in Puerto Rico,[3] only the transfer to the Finance Department and subsequent incidents were actionable.  Id. at 72-73.  In so holding, the court rejected Ayala's argument that the otherwise time-barred allegations were actionable under the "continuing violation" doctrine; this doctrine "allows a plaintiff to incorporate allegations that would ordinarily be time-barred if they are part of the same unlawful employment practice and at least one act falls within the time period."  Id. at 73 (quoting Quiles-Marcucci v. Cooperativa de Ahorro y Crédito de Juana Díaz, Inc., No. 08-1913, 2009 WL 1941219, *3 (D.P.R. Jun. 30, 2009)) (internal quotation marks omitted).  The court then

---

[3]  A claim under § 1983 is subject to the statute of limitations imposed on personal injury claims under state law.  See Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005).  In Puerto Rico, the statute of limitations for § 1983 claims is one year.  See Marrero-Gutiérrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007) (citing P.R. Laws Ann. tit. 31, § 5298(2) (2009)).

held that because Ayala's transfer to the Finance Department did not materially change his working conditions, Ayala had suffered no adverse employment action and thus could not sustain a claim for retaliation.  Id. at 74.  The court then addressed Ayala's claim that he had been singled out for discriminatory treatment based on his sexual orientation.  Id. at 75.  The court rejected this claim for two reasons.

First, the court held that there was no basis for holding Negrón or the City liable for any of the discriminatory acts alleged in the complaint.  In Puerto Rico, because mayors "are the government officials ultimately responsible for employment decisions of the municipality," a municipality can be held liable for employment decisions by its mayor.  Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 770 (1st Cir. 2010).  Therefore, the district court held that the City could be liable for discrimination against Ayala if Negrón condoned discrimination or himself acted with discriminatory intent.  See Ayala II, 727 F. Supp. 2d at 75.  The court found that there was no evidence that Negrón authorized or condoned the allegedly hostile work environment at OMME.  See id.  As for the transfer, the sole piece of evidence Ayala provided to show discriminatory intent was Negrón's alleged statement to Ayala's mother that his "sexual definition" was causing his problems.  The court held that this was insufficient to establish Negrón's discriminatory intent.  See id.

(citing Ríos-Jiménez v. Sec'y of Veterans' Affairs, 520 F.3d 31, 43-44 (1st Cir. 2008), to note in parenthetical that "offhand comments 'are not sufficiently severe or pervasive' to amount to discriminatory changes in employment").

Second, the court concluded that even if Ayala had been singled out for transfer because of his sexual orientation, his transfer to the Finance Department satisfied rational basis review. The defendants had introduced evidence that Ayala was transferred based on service needs and in order to resolve the conflict between Ayala and his co-workers at OMME. See id. at 76. Ayala provided no rebuttal evidence. Id.

Ayala now appeals only the grant of summary judgment to the defendants on the § 1983 claim under the Equal Protection Clause. He does not appeal the judgment on the pleadings regarding his Title VII or due process claims.

## II. Discussion

We first discuss whether the alleged acts of discrimination that occurred before the transfer to the Finance Department are actionable. We then consider whether Ayala suffered any act of retaliation in violation of his equal protection rights.[4] Finally, we consider whether Ayala was singled out for

---

[4] Negrón contends that there is no cause of action for retaliation under the Fourteenth Amendment. However, this issue was never raised to the district court and was only cursorily addressed in Negrón's brief. Thus, this argument is waived on appeal. See Farris v. Shinseki, 660 F.3d 557, 562 n.5 (1st Cir. 2011). We

disparate treatment in any way because of his sexual orientation in violation of his equal protection rights.

## A. Standard of Review

We review a district court's grant of summary judgment de novo, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the nonmoving party. Kuperman v. Wrenn, 645 F.3d 69, 73 (1st Cir. 2011). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Cortés-Rivera v. Dep't of Corr. & Rehab. of P.R., 626 F.3d 21, 26 (1st Cir. 2010). "[W]e are not married to the trial court's reasoning but, rather, may affirm on any independently sufficient ground made manifest by the record." Cahoon v. Shelton, 647 F.3d 18, 22 (1st Cir. 2011). "The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986)). However, "a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden." DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896

assume for the purposes of this case that the Fourteenth Amendment supports a cause of action for retaliation.

-10-

F.2d 5, 8 (1st Cir. 1990)) (internal quotation marks omitted).
"[T]he party seeking to avoid summary judgment 'must be able to
point to specific, competent evidence to support his claim.'"
Soto-Ocasio v. Fed. Exp. Corp., 150 F.3d 14, 18 (1st Cir. 1998)
(quoting August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st
Cir. 1992)).

## B. Continuing Violation Doctrine and Hostile Work Environment

In Puerto Rico, § 1983 claims are subject to a one-year
statute of limitations. Marrero-Gutiérrez, 491 F.3d at 5. Based
on the May 26, 2009 filing date of Ayala's complaint, the only
alleged discriminatory act that occurred within the one-year
limitations period was Ayala's transfer to the Finance Department.[5]
Ayala argues, however, that the earlier alleged incidents were also
actionable under the "continuing violation" doctrine, which allows
a plaintiff to incorporate allegations that would otherwise be
time-barred if they "are part of the same unlawful employment
practice and at least one act falls within the time period." Nat'l
R.R. Passenger Corp. v. Morgan (AMTRAK), 536 U.S. 101, 122 (2002).[6]

---

[5]  Ayala also claims that he suffered an emotional breakdown after
having to process an invoice for payment to the lawyer the City
hired to defend his CASARH claim. However, Ayala makes no argument
in his brief that the defendants made him process the invoice as an
act of discrimination or retaliation. Thus, Ayala has waived any
argument based on this allegation. See United States v. DiTomasso,
621 F.3d 17, 26 n.7 (1st Cir. 2010) (arguments not made in a
party's opening brief are deemed waived).

[6]  Although AMTRAK discusses the continuing violation doctrine in
the Title VII context, the doctrine also applies to cases under

Ayala argues that the "unlawful employment practice" here was the creation of a hostile work environment. We thus consider whether there is sufficient evidence to support Ayala's claim that he suffered a hostile work environment.

When determining whether a work environment is hostile, the court considers "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 116 (quoting Harris v. Forklift Sys., 510 U.S. 17, 23 (1993)). None of these factors is individually determinative of the inquiry. Bhatti v. Trs. of Boston Univ., 659 F.3d 64, 73-74 (1st Cir. 2011).

Looking at "all the circumstances," we agree with the district court that the discriminatory acts alleged did not rise to the level of a hostile work environment. While Ayala claims that he was ridiculed by his co-workers at OMME, he cites to no evidence regarding the severity or pervasiveness of the ridicule. Ayala mentions the incident on February 15, 2008 in which Rodríguez allegedly threatened him, but he also notes that Cruz called the Puerto Rico Police to the scene to defuse the situation. Finally, Ayala has presented almost no evidence to suggest that the alleged

§ 1983. See, e.g., Muñiz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994).

harassment at OMME "unreasonably interfere[d] with [his] work performance." AMTRAK, 536 U.S. at 116. The only factual averment that comes close to such a showing is Ayala's uncontested claim that he had to seek medical treatment for anxiety after meeting with Negrón, Rodríguez and Miranda. However, there is no evidence on the record that Ayala's work performance suffered as a result of his anxiety. Compare Bhatti, 659 F.3d at 74 (upholding grant of summary judgment against plaintiff in hostile work environment suit where plaintiff "sought psychological counseling" but "pointed to no effect whatsoever on her work performance"), with Arrieta-Colón v. Wal-Mart P.R., Inc., 434 F.3d 75, 89 (1st Cir. 2006) (upholding hostile work environment verdict where there was "constant mockery and harassment" that led to resignation) and Marrero v. Goya of P.R., Inc., 304 F.3d 7, 19-20 (1st Cir. 2002) (upholding hostile work environment verdict where there was repeated sexual harassment that led to decreased performance).

Because Ayala has not demonstrated that he was subjected to a hostile work environment to which the continuing violation doctrine could apply, his allegations regarding events occurring prior to the one-year statute of limitations period are time-barred. Thus, only the transfer to the Finance Department is actionable.

## C. Retaliatory Transfer

Ayala claims that his transfer to the Finance Department violated his equal protection rights because the transfer was ordered as retaliation for Ayala's filing of the CASARH complaint. In order to succeed on a claim of retaliation, Ayala must prove that "the employer took a materially adverse employment action against him." Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996). An employment action is "adverse" if it "results in a work situation 'unreasonably inferior' to the norm for the position." Rodríguez-García, 610 F.3d at 766 (quoting Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989)).

Here, there is no evidence to suggest that Ayala's pay, rank, or duties changed after he was transferred to the Finance Department.[7] Moreover, Ayala has failed to present any evidence or explanation as to how the transfer affected him in any other material way. Thus, we find that Ayala's transfer to the Finance Department was not an adverse employment action. Because Ayala did not suffer any adverse employment action, we find that the district

---

[7] Ayala contends in his brief that his duties did change. In support of this claim, he points to various excerpts from his deposition that were included in the record before the district court. However, these deposition excerpts do not contain any coherent explanation of how Ayala's duties changed. This will not do. "[T]he party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his claim." Soto-Ocasio, 150 F.3d at 18 (emphasis added) (quoting August, 981 F.2d at 580) (internal quotation marks omitted).

-14-

court properly granted summary judgment as to Ayala's Fourteenth Amendment retaliation claim.

## D. Improper Classification Based on Sexual Orientation

In addition to arguing that the defendants transferred him to the Finance Department to retaliate against him, Ayala argues that the defendants singled him out for transfer because of his sexual orientation. Ayala argues that this singling out violated his equal protection rights.

In an equal protection case, the court considers "(1) whether the [plaintiff] was treated differently than others similarly situated, and (2) whether such difference was based on an impermissible consideration, such as race." Lopera v. Town of Coventry, 640 F.3d 388, 402 (1st Cir. 2011) (quoting Macone v. Town of Wakefield, 277 F.3d 1, 10 (1st Cir. 2002)). Some evidence of actual disparate treatment is a "threshold requirement" of a valid equal protection claim -- and one Ayala fails. Estate of Bennett v. Wainwright, 548 F.3d 155, 166 (1st Cir. 2008).

Ayala points to no evidence that he was treated differently than others similarly situated. "Plaintiffs claiming an equal protection violation must first 'identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate that plaintiffs were singled out for unlawful oppression.'" Buchanan, 469 F.3d at 178 (quoting Rubinovitz v.

-15-

Rogato, 60 F.3d 906, 910 (1st Cir. 1995)) (alterations to quotation omitted).  Ayala presents no evidence regarding, for example, instances in which heterosexual employees with similar rank and qualifications were not transferred.  Our case law requires evidence of this nature.  See, e.g., Goncalves v. Plymouth Cnty. Sherrif's Dep't, 659 F.3d 101, 106 (1st Cir. 2011) (upholding summary judgment in favor of defendant where plaintiff failed to show she had comparable qualifications to hired candidates); Buchanan, 469 F.3d at 178 (upholding summary judgment in favor of defendant where plaintiff failed to show that patients with similar mental conditions were treated differently).  Having failed to meet his threshold requirement, Ayala cannot succeed on his equal protection claim.  Our inquiry, therefore, is at an end.

Because Ayala has not presented sufficient evidence of an equal protection violation to warrant a trial, we find that the district court properly granted summary judgment to the defendants on this claim.

### III.  Conclusion

For the reasons stated, we affirm the district court's grant of summary judgment.

**Affirmed**.